(173 App. Div. 633)

TIMES SQUARE IMPROVEMENT CO., Inc., v. FLEISCHMANN'S VIENNA MODEL BAKERY, Inc.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. LANDLORD AND TENANT ⬅123—LEASE—DESCRIPTION OF PREMISES.

The fact that vault space was not specifically mentioned in lease is not conclusive that it was not included as a part of the premises demised.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 435, 436; Dec. Dig. ⬅123.]

2. EVIDENCE ⬅460(5)—LEASE—DESCRIPTION OF PREMISES—EXTRANEOUS EVIDENCE.

The fact that vault space not mentioned in a lease was included in such lease may be proved by circumstances and conduct of the parties indicating that they considered it a part of the leased premises.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2119; Dec. Dig. ⬅460(5).]

3. LANDLORD AND TENANT ⬅41—LEASE—DESCRIPTION OF PREMISES—EXTRANEOUS EVIDENCE.

Where a lease described storerooms and basement thereunder, acts of the lessor in making alterations in the basement and vault adjacent thereto, pursuant to an agreement with the tenant, held to warrant the inference that the vault room was included in the lease, although not expressly mentioned therein.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 105; Dec. Dig. ⬅41.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. LANDLORD AND TENANT ⬤➾130(2)—LIABILITY OF LANDLORD—BREACH OF COVENANT OF PEACEABLE POSSESSION.

The taking by the city of a part of vault space constructed under the sidewalk by the owner of the premises under a license from the city is a breach of lessee's covenant of quiet enjoyment and possession, for which he may hold the lessor liable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 473–475; Dec. Dig. ⬤➾130(2).]

5. LANDLORD AND TENANT ⬤➾223(5)—ACTION FOR RENT—COUNTERCLAIM—DAMAGES FOR BREACH OF COVENANT.

A tenant in an action for unpaid rent may counterclaim for damages for breach of covenant of quiet and peaceable possession for the entire duration of such breach, and is not restricted to damages from and after the date on which he last paid rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 889–891; Dec. Dig. ⬤➾223(5).]

6. LANDLORD AND TENANT ⬤➾223(5)—ACTION FOR RENT—ASSIGNEE OF LESSOR—BREACH OF COVENANTS—COUNTERCLAIM.

In an action for rent by the assignee of the lessor under a lease, the covenants of which are declared to be binding on the parties, their successors, and assigns, the tenant may assert his counterclaim for damages for breach of a covenant for quiet and peaceable possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 889–891; Dec. Dig. ⬤➾223(5).]

7. LANDLORD AND TENANT ⬤➾223(5)—ACTIONS—DAMAGES FOR BREACH OF COVENANT—PLEADING.

In an action for unpaid rent, a counterclaim for damages for breach of quiet and peaceable possession is not subject to objection that defendant voluntarily paid rents after such breach, since such payments were compulsory, and not voluntary payments.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 889–891; Dec. Dig. ⬤➾223(5).]

8. LANDLORD AND TENANT ⬤➾230(3)—COUNTERCLAIM—SUFFICIENCY OF PLEADING.

In action for rent, tenant's answer, alleging a breach of the covenant for quiet and peaceable enjoyment and possession, and asking damages therefor, was sufficient, notwithstanding the allegation of an overpayment of rent because of such breach, and demand of a rebate; such allegations being in effect merely allegations of payments of rent as required by the lease and statements of the tenant's measure of damages.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 912, 914; Dec. Dig. ⬤➾230(3).]

Action by the Times Square Improvement Company, Incorporated, against Fleischmann's Vienna Model Bakery, Incorporated. On motion by plaintiff for judgment, upon a verdict subject to the opinion of the court, after a trial in the City Court of the City of New York, or in the alternative for a new trial upon exceptions, ordered to be heard in the first instance at the Appellate Division of the Supreme Court. Exceptions overruled, and judgment directed to be entered on the verdict.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Joseph A. Seidman, of New York City, for appellant.
Louis Salant, of New York City, for respondent.

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, J. This action was tried in the City Court of New York before a jury. With the consent of counsel the court submitted two questions for the determination of the jury; the counsel agreeing that, after the jury had made its findings upon the two specific questions submitted to it, the court should direct a verdict, subject to the opinion of the court. The court directed a verdict for the plaintiff for the sum of $297.50, that is, for $1,750 and interest, less the amount of defendant's counterclaim, subject to the opinion of the court, and accordingly the jury rendered that verdict. The plaintiff was not satisfied with his verdict, because the defendant had prevailed on its counterclaim. Accordingly the plaintiff moved to set aside the findings of the jury and the verdict directed thereon. This motion was denied, and appropriate exceptions taken by the plaintiff. Thereafter, on motion of the plaintiff, the court ordered that the plaintiff's exceptions be heard in the first instance by this court. Upon this hearing the plaintiff now moves that its exceptions be sustained, the defendant's counterclaim be dismissed, and judgment directed in favor of the plaintiff with costs. On the other hand, the defendant moves that these exceptions be overruled, and that this court order a judgment in its favor upon the verdict as directed by the trial court.

The action is to recover rent due December 1, 1915, under a lease made to the defendant by the James McCreery Realty Corporation of a part of the premises on the northwest corner of Broadway and Eleventh street, New York City. The defendant admitted the rent to be due as claimed, but set up a counterclaim for damages because of an alleged partial eviction by a title paramount to that of the plaintiff. The following facts appear from the record of the trial:

The defendant held under a lease dated December 15, 1906, from the James McCreery Realty Corporation, for a term of 10 years and 3 months from February 8, 1908. By the terms of this lease the two Broadway stores of the building in question, together with the "basement under said two stores," were demised to the defendant. Contiguous to the space directly under the stores there was a vault built underneath the sidewalk of Broadway and of Eleventh street. This vault extended from the building line to the curb line. It was constructed in 1868 by Lake & McCreery, at that time owners of the premises, under a license from the city. By mesne conveyances these premises passed from Lake & McCreery to the James McCreery Realty Company, and the vault was used by the successive owners of the building or their tenants. The lease to the defendant contained a general covenant of quiet enjoyment, with the provision that the covenant should be binding on and for the benefit of the parties thereto, and their heirs, successors, legal representatives, and assigns. After the entry of the defendant under the lease, the James McCreery Corporation leased the entire building to Reuben Sadowsky, and thereafter, by lease dated August 5, 1913, Sadowsky leased the entire building to the plaintiff; said lease going into effect February 1, 1914. On October 1, 1914, the city of New York took possession of a part of this vault space under Broadway for the purposes of the subway then being built along the line of Broadway. The space thus taken by the

city was 78 feet long and 10 feet wide. Thus the defendant was partially evicted from the premises theretofore occupied by it.

[1-3] The defendant claims that the vault space referred to was part of the premises demised under its lease from the James McCreery Realty Corporation, and that the covenant of quiet enjoyment was broken when the city took possession of a part of the vault, and that the plaintiff is liable in damages therefor. This vault space is not specifically mentioned in the lease, and the plaintiff claims that therefore it was not demised under the lease. But specific mention of the vault in the lease is not essential to its inclusion in the demise. The fact of its being so included may be proved by circumstances showing an intention to include it, such as conduct of the parties with reference to it, indicating that they considered it a part of the demised premises. It appears that the vault was immediately contiguous to the basement proper—the floor levels were the same and likewise the ceiling levels. No partitions separated the two spaces. In fact, the basement proper and the vault together made one large room, and there was no access to the vault, except through the basement proper. That the parties themselves considered the vault a part of the basement, and covered by the lease, is shown by their conduct in carrying out some of the terms of the lease. For example, in paragraph 2 of the lease to the defendant we find the following:

"At or before the date of the tenant's occupancy, the lessor agrees to put the flooring in the basement in good order, by replacing the flooring where necessary, or by relaying it where it is warped."

The flooring was replaced and relaid, not only in the basement proper, but also throughout the vault space; the new flooring making a continuous and single floor for both spaces. The lessor also agreed "to remove the toilets in the basement, and to set them up and connect them for use in other parts of the basement." Under this provision the position of the toilets in the vaults was changed from one part of the vault space and set up and connected for use in another part of the vault space. The lessor further agreed "to remove the steam coils and boxes on the ceiling in the basement, and to furnish in their stead radiators of sufficient size and number to heat the premises demised." In performance of this agreement certain coils and boxes in the vault space were taken out, and in their place radiators were installed by the lessor in the vault space. All this was done with the approval in writing of the president of the lessor and through its president, acting on its behalf. Then, again, the lessor also agreed "to furnish the tenant with a coal and wood bin (to be built by the lessor at his expense) at some point in the basement." A coal and wood bin was built in the vault space. There are other circumstances appearing in the evidence from which the inference may be drawn that the lessor intended to and did include this vault space as a part of the demised premises, but it is unnecessary to refer further to the evidence on this point.

[4] There is no doubt that the lessor had power to lease the vault to the defendant. Its right to use the vault is recognized as property. It is "an easement appurtenant to the lessor's property, and in

itself a species of property, which the plaintiff may protect as fully as other property." Parish v. Baird, 160 N. Y. 302, 54 N. E. 724; N. Y Steam Co. v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L. R. A. (N. S.) 470; Matter of Brooklyn v. Union El. Ry. Co., 105 App. Div. 111, 114, 93 N. Y. Supp. 924. In our judgment the evidence before the court shows quite conclusively that the vault space referred to was demised under the lease to the defendant, and that as to the vault space taken by the city there was a breach of the covenant of quiet enjoyment. See Hoffman v. Murray, Greenabum, J., Law Journal March 27, 1913, affirmed without opinion in 159 App. Div. 904, 144 N. Y. Supp. 1121, and 216 N. Y. 750, 111 N. E. 1088.

At the trial an issue of fact was raised by the testimony of Mr. McCreery and of Mr. Prang. Mr. McCreery asserted that he told the defendant's representatives, at the time of signing the lease, that he was not leasing any part of the vault space. On this point he was contradicted by Mr. Prang, the manager of the defendant. Accordingly the court, by stipulation of counsel, submitted the following questions to the jury:

(1) Whether, at or before the time of the signing of the lease between the McCreery Realty Corporation and defendant, the president of the said McCreery Corporation, James Crawford McCreery, stated to the representatives of the defendant corporation that the vault space was not owned by the corporation, and was not undertaken to be rented by it under the lease, but that the said vault space was occupied only under a permit from the city, and, while the McCreery Corporation would have no objection to the use of the vault space by the defendant, such occupancy and use would only be at the sufferance of the city.

(2) What damages per annum were suffered by the defendant as a result of the partial eviction?

The jury answered the first question in the negative, and the second question by fixing the damages for the partial eviction at $1,170 per year. Thereupon the court directed a verdict for the plaintiff for the difference between the rent due on December 1, 1915, and the damage sustained by defendant from October 1, 1914, the date when the city took part of its vault to the 1st of December, 1915, thus sustaining defendant's counterclaim. The defendant thus recovered damage for the breach of the covenant of quiet enjoyment for the time between October 1, 1914, and December 1, 1915.

[5] Such a recovery is allowed under the authority of Cook v. Soule, 56 N. Y. 422, where it was held that in an action for a quarter's rent, the previous rent having been paid, the defendant had the right to counterclaim damages for breach of a covenant to repair, and recover the damages suffered during an entire year, and was not limited to the damages suffered during the quarter for which rent was past due, and under the authority of Franklin Bldg. Co. v. Finn, 165 App. Div. 469, 150 N. Y. Supp. 995, in which Justice Laughlin used the following language (165 App. Div. 475, 476, 150 N. Y. Supp. 1000):

"The fifth counterclaim is for loss and damage alleged to have been sustained by a partial eviction by the landlord on the 1st of November, 1911, by depriving the tenant of the use of approximately 300 square feet of space 'in the rear part thereof,' and it is alleged that the landlord has ever since continued in possession of that part of the floor space. The facts pleaded would,

doubtless, have authorized a counterclaim, and evidence upon which the tenant would have been entitled to an apportionment of the rent, owing to his being deprived of a substantial part of the entire space for which the rental was agreed upon. An apportionment of rent, of course, would leave some rent due, and would not be a defense to the proceeding, unless it was for a sufficiently long period to equal the rent for the failure to pay which the proceeding was instituted."

[6] The defendant's claim is properly against the plaintiff, and not against Sadowsky or the James McCreery Realty Corporation. This clearly appears from the terms of the various leases. The lease from the McCreery Corporation makes the covenants therein binding upon successors and assigns. The McCreery Corporation leased the whole premises to Sadowsky, and assigned the defendant's lease to him, and he in turn agreed to perform the covenants to be performed by the McCreery Company under the defendant's lease. And when Sadowsky leased the premises to the plaintiff, the plaintiff also agreed to carry out the covenants in the defendant's lease.

[7] The plaintiff claims that the defendant's counterclaims disclose an action for money had and received, or for money overpaid, which money it may not now recover because they were voluntarily paid. In answer to this claim it is sufficient to say that the plaintiff has not pleaded voluntary payment, and furthermore on the face of the pleading the payments were not voluntary, but compulsory under the provisions of the lease.

[8] The evidence produced is sufficient to show a partial eviction of defendant, by paramount title, and a breach of the covenant of quiet enjoyment. It therefore remains to determine whether the defendant has stated a cause of action for damages for a breach of this covenant. In its answer the defendant alleges, as a partial defense and by way of counterclaim, the making of the various leases, with their covenants, the partial eviction of the defendant from the vault space by the city under its paramount title, and the consequent decrease in the rental value of its leasehold to the extent of $250 for the month of December, 1915 (the month for the rent of which the action is brought). These allegations in effect make out a case of a breach of the covenant of quiet enjoyment, for which damages may be recovered. The defendant then alleges that because of this reduction in the value of his leasehold he is entitled to an apportionment and abatement of the rent for December, 1915, to the extent of $250. In its second counterclaim defendant repeats the allegations of his first counterclaim, and then alleges that by reason of the facts so pleaded the rental value of his leasehold has been reduced to the extent of $250 for each of the months from October, 1914, to November, 1915, inclusive; but, notwithstanding this fact, it has paid its rent for each of said months from October 1, 1914, to November, 1915, inclusive. And then follows the statement that the defendant has thereby overpaid the plaintiff in the sum of $3,500. It then demands judgment for $3,750, less $1,750 rent for December, 1915.

This allegation of overpayment in the second counterclaim does not necessarily determine the nature of defendant's cause of action. It simply amounts to a statement that the defendant paid its rent as

·the lease required it to do, and that its damage amounted to $3,500, no part of which had been paid. As to the first counterclaim, the allegation that the defendant is entitled to an apportionment and abatement of the rent for December, 1915, to the extent of $250, is merely one way of saying that the damage of $250 to its leasehold should be allowed as a counterclaim in reduction of plaintiff's claim for the rent of December. For these reasons, we think that the defendant has pleaded good counterclaims for damages for a breach of the covenant of quiet enjoyment, and has sustained those counterclaims by competent evidence.

The plaintiff's exceptions, therefore, should be overruled, with costs, and a judgment directed to be entered in accordance with the verdict as directed by the trial judge. All concur.