Guy Gilbert Ribaudo, J.
This is a summary proceeding brought by the landlord against the tenant and undertenant to recover the possession of certain demised premises for nonpayment of rent for the months of November and December, 1957. The tenant and undertenant have interposed a single answer setting forth a general denial and a separate and distinct defense of actual partial eviction.
The relevant and material facts, as they appear from the testimony herein and from the documents, papers and photographs marked in evidence, are as follows:
On February 25, 1954, the tenant entered into a written lease with the landlord of certain premises in a building located at 512 Broadway, borough of Manhattan, city of New York. By an agreement in writing dated on or about October 3, 1956, the lease was extended for a period of two years from February 1, 1957 to January 31, 1959, and modified so as to provide for a monthly rental of $1,250 during the entire extended term. The terms, conditions and provisions of the aforesaid lease remained in full force and effect in all other respects.
The lease describes the premises demised to the tenant thereunder as ‘ ‘ the store, together with the basement and subbase *462 ment”. The basement and subbasement have been leased-by the tenant to the undertenant.
The building in which the demised premises are located runs the length of the entire block from Broadway to Crosby Street and the demised premises also cover this entire length. The front of the “ store ” is on the Broadway side. The testimony herein and the photographs introduced into evidence by the tenant reveal that the “ store ” consists of a lower portion and a mezzanine balcony. Both the mezzanine balcony and the lower store have a common ceiling and there is no question but that both areas constitute a single physically integrated unit. There is a stairway leading* from the lower store to the mezzanine balcony. Both areas have been used and occupied by the tenant in the conduct of its business from the inception of the lease continuously to the present time.
At the time the lease was executed the building in which the demised premises are located contained two elevators. One elevator was and still is in the store on the Broadway side and serves various floors, but never reached or served the mezzanine balcony floor. It is not this elevator which is involved in this proceeding. The other elevator, which was and still is entered from the Crosby Street side, was a freight elevator, manually operated by an employee of the landlord. This' freight elevator was in use and operation at the time the lease was first executed. It opened into the rear of the lower store on the street floor and into the rear of the mezzanine floor.
The tenant purchased large bales of textile materials and remnants which weighed approximately 500 pounds each. These bales would be delivered to the tenant at the Crosby Street entrance to the building and placed on the manually operated freight elevator on the street floor, whereupon the said elevator would ascend to the mezzanine floor where the bales would be removed for processing by the tenant. The tenant seamed together pieces of textile materials or remnants, and for that purpose installed a large examining and measuring machine on the mezzanine floor. There the materials would be seamed together, examined, measured, rolled and folded. Thereupon the pieces of cloth would be placed on the freight elevator on the mezzanine floor and the elevator would descend to the street floor where the pieces of cloth would be removed to the store. The mezzanine floor was also used by the tenant for the storage of its textiles.
During July, 1957, the landlord began the conversion of the manually operated freight elevator to a self-service freight elevator, as it had a- right to do. The tenant was nqt notified *463 nor consulted with respect to the manner in which the conversion would be effected. In undertaking the conversion of the freight elevator the landlord sealed and blocked off the openings from the freight elevator into the lower store floor and the mezzanine floor. The tenant was not notified, nor did it have knowledge until several months later, that such condition was intended by the landlord to be a permanent one. The tenant did not complain of this condition while the work was in progress because of the right of the landlord to make alterations and because the tenant believed that after the conversion was completed the landlord would restore the freight elevator openings into the lower store floor and mezzanine floor to their former condition.
The tenant paid the rent for the months of July, 1957 through October, 1957, both inclusive. During the month of October, 1957, and after the rent for that month had been paid, the tenant learned for the first time that the landlord intended to and had permanently sealed and blocked off the freight elevator openings into the lower floor and mezzanine, thus preventing the tenant from conducting its business in the manner hereinabove described. The tenant thereupon complained of the condition to the landlord’s president and demanded that the former openings be restored in order that the tenant could make use of the premises as it had done in the past. The landlord’s president refused to do this and suggested to the tenant that it make use of the stairway leading from the lower store to the mezzanine floor for the conduct of its business. After the tenant pointed out the extreme difficulty and hardship it and its employees would encounter in moving 500-pound bales up a staircase by hand, the landlord offered to install a hoist. The tenant refused to accept this offer as inadequate.
The defense of an actual partial eviction, is available to a tenant in a summary proceeding. (Kerrigan v. May, 188 N. Y. S. 774; Econopouly v. Hamerman, 185 N. Y. S. 291.)
The rule is well settled that an actual eviction, though partial only, by an act of the landlord, suspends the entire rent. (Fifth Ave. Bldg. Co. v. Kernochan, 221 N. Y. 370; Libby Properties v. Gross, 76 N. Y. S. 2d 568; Seigel v. Neary, 38 Misc. 297.) In stating the rationale of the rule, the court in Fifth Ave. Bldg. Co. v. Kernochan (supra, p. 373) speaking through Judge Cabdozo says: “We are dealing now with an eviction which is actual and not constructive. If such an eviction, though partial only, is the act of the landlord, it suspends the entire rent because the landlord is not permitted to apportion his own wrong.”
*464 From the foregoing rule it appears that the fact that a tenant has been evicted from only a relatively small portion of the space demised to it is of no avail to a landlord; a fact, which the landlord in the case at bar attempts to make much of; nor does it appear as the landlord herein contends that a tenant has to prove the extent to which its business has been damaged as a result of an actual partial eviction. Where, as in the case at bar a tenant remains in possession after an actual partial eviction, he has no claim for damages. (Peerless Candy Co. v. Halbreich, 125 Misc. 891, correcting on reargument 125 Misc. 889; Kennedy v. Peterart Realty Corp., 171 Misc. 351.)
With the foregoing rules in mind I address my attention to the various arguments urged by the parties hereto.
The landlord urges that since the mezzanine was not expressly mentioned in the lease as a part of the premises demised to the tenant herein, that the tenant herein has no right to use and occupy it. The lease does mention the “ store” as part of the demised premises and as appears from the photographs introduced into evidence by the tenant the “ store ” consists of a lower portion and the mezzanine, both of which have a common ceiling. The tenant has occupied and used the mezzanine from the inception of the lease with the landlord’s knowledge and consent and there is no doubt that the mezzanine and lower store constitute a single physically integrated unit which is described in the lease as the £ £ store ’ ’. Furthermore, specific mention of the mezzanine in the lease was not essential to its inclusion in the demise. Its inclusion may be proved by circumstances showing an intention to include it, such as the parties conduct with reference thereto. (Times Square Improvement Co. v. Fleischmann Vienna Model Bakery, 173 App. Div. 633; Greenblatt v. Zimmerman, 132 App. Div. 283.)
The landlord further argues that the lease does not specifically grant the tenant the right to use the freight elevator for service to the lower floor and mezzanine and therefore, the court must determine whether it is an appurtenance to the demised premises. Included in paragraph 13 of the lease is the following provisions: ‘£ Whenever it is necessary for Tenant, Tenant’s servants, employees or agents to use the elevators in the building, the working hands of Tenant and persons calling for and delivering goods to and from the demised premises shall use the freight and not the passenger elevators ’ ’. This lease was prepared by the landlord and submitted to the tenant for its approval, and it would appear from the language heretofore quoted that there was an express grant to the tenant of *465 the right to use the freight elevator in the manner in which it has heretofore been used by the tenant.
Assuming arguendo that the language of the lease above quoted does not constitute a specific grant to the tenant of the right to use the freight elevator in the manner in which it has heretofore been used by it, that does not bar the tenant’s right to the continued enjoyment thereof. In Henry A. Fabrycky, Inc. v. Nad Realty Corp. (261 App. Div. 268, 269) the court says: ‘ ‘ Here the elevator appurtenance was not specially reserved by the landlord. The fact that elevator service was not mentioned in the lease under the circumstances herein does not bar plaintiff’s right to the enjoyment thereof.”
The general rule is that appurtenances reasonably essential to the demised premises pass as an incident to them unless specifically reserved. (Henry A. Fabrycky, Inc. v. Nad Realty Corp., supra.) Appurtenances are incorporeal easements or rights and privileges which may pass with a grant or demise. (1 Basch on Landlord and Tenant and Summary Proceedings, § 834.) If the use of the elevator by the tenant is reasonably necessary and essential to the beneficial enjoyment of the demised premises then the tenant is entitled to the continued use thereof in the manner in which it has heretofore used it, and any interference therewith or disturbance thereof constitutes an actual partial eviction. (Stevens v. Taylor, 111 App. Div. 561; American Tract Soc. v. Jones, 76 Misc. 236; Seigel v. Neary, 38 Misc. 297, supra; Leventhal v. Straus, 197 Misc. 798; Sturner v. Delaware Properties, 135 Misc. 514, affd. 234 App. Div. 815; Holtz Amusement Co. v. Schorr, 122 Misc. 712.)
I find from the foregoing facts that the freight elevator and its openings into the lower store and mezzanine constitute appurtenances to the premises demised to the tenant and are reasonably necessary and essential to the tenant’s beneficial enjoyment thereof and that the landlord’s interference therewith and disturbance thereof constitute an actual partial eviction.
Other contentions urged by the landlord are equally without merit. The fact that the tenant paid the rental for the months of July, 1957, through October, 1957, both inclusive, while the actual partial eviction existed does not constitute a waiver of that eviction which continued during the months of November and December, 1957, for which months rent is sought to be recovered in this proceeding. (Davies, Turner & Co. v. Schatzen, 124 Misc. 170; Kerrigan v. May, 188 N. Y. S. 774, supra; Kusche v. Sabin, 6 N. Y. S. 2d 771.)
*466 It is not necessary for the tenant to remove from the premises in order to set up the defense of partial eviction. (Davies, Turner & Co. v. Schatzen, supra; Kusche v. Sabin, supra.)
It follows, therefore, that final order is to be given in favor of the tenant and undertenant, dismissing the landlord’s petition.