■ UNION CITY UNION SUIT CO., LTD., Doing Business as HEALTH LOOM CORP., Appellant-Respondent, v NACHUME MILLER et al., Respondents-Appellants.—Judgment of the Supreme Court, New York County (Irving Kirschenbaum, J.), entered September 29, 1988, which *inter alia,* awarded plaintiff damages of $50,000 for the additional expense of purchasing "heat transfers" and awarded defendants rent and use and occupancy in the amount of $17,000, unanimously modified, on

the law and on the facts, to the extent of increasing the award for the additional expense of purchasing "heat transfers" to $315,100, and deleting the award to defendant landlord of rent and use and occupancy, and except as so modified, affirmed, without costs.

Plaintiff, a manufacturer and retailer of tee shirts and other apparel, leased premises located at 40 West 17th Street in Manhattan from defendants' predecessor in interest. The term of the original lease commenced on December 1, 1978 and expired on November 30, 1981. Thereafter, the lease was renewed at plaintiff's option for a two-year period ending on November 30, 1983. As is here relevant, the lease obligated the landlord to provide heat and freight elevator service. The lease, however, also provided that, "[e]xcept as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of the Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof."

In December 1978 the building in which the leased premises were located was sold to defendants who soon set about converting all of the building's commercial loft space, except that occupied by the plaintiff, to cooperative apartments. During the conversion, plaintiff's heat was interrupted for significant periods and pipes burst causing the flooding of plaintiff's premises. Freight elevator service was also interrupted and in March of 1983 the freight elevator was removed as an incident of the conversion.

This lawsuit was commenced in July 1981. Plaintiff sought damages for defendants' failure to provide heat and freight elevator service. In January 1983, plaintiff obtained a temporary restraining order preventing the defendants from removing the building's freight elevator, and in February of the same year a preliminary injunction was entered barring the defendants during the pendency of the litigation from dismantling the elevator or otherwise interfering with plaintiff's use of it. A subsequent application by the defendants to remove the freight elevator was denied. The elevator was, nevertheless, removed by defendants, apparently because they wished to obtain a residential certificate of occupancy by March 9, 1983 and thereby avoid payment of a very substantial relocation allowance.

After a bench trial, the plaintiff was awarded judgment in the amount of $141,772.14. The trial court found that the defendants had failed to honor their obligations under the lease to provide heat and elevator service. As a result of this deprivation of essential services the plaintiff was found to have suffered damages for which it was entitled to be compensated. The court awarded the plaintiff $28,189 for trucking and warehouse expenses incurred as a consequence of the defendant's failure to provide elevator service; $7,994.64 for unrecouped flood damage incurred as a consequence of defendant's failure to provide heat; and $50,000 to cover plaintiff's additional expense in the purchase of heat transfers* which it would have been able to manufacture itself at greatly reduced cost had the premises been adequately heated. Interest constituted the remainder of the plaintiff's award. The court also awarded defendants judgment on their counterclaims for rent and use and occupancy for the period extending from June 1983 until June 1984 in the amount of $17,000 plus interest.

Plaintiff and defendants now appeal from the judgment. Defendants' principal contention on appeal is that the aforecited exculpatory clause precludes any award to the plaintiff. Plaintiff maintains not only that the exculpatory clause has no such effect but that the damages awarded were inadequate. Specifically, plaintiff urges that the $50,000 awarded for the cost of purchasing heat transfers should be increased to the $315,100 amount prayed for in the complaint. Plaintiff also urges that the rent and use and occupancy award in defendants' favor ought to be deleted since defendants' failure to provide elevator service prevented the plaintiff from vacating the premises at the end of the lease term and constituted an actual partial eviction suspending the plaintiff's obligation to pay any rent or use and occupancy.

Preliminarily, we are in agreement with the trial court that plaintiff demonstrated by an overwhelming preponderance of the evidence that defendants failed to provide essential services to which plaintiff was entitled under the lease. We also agree that defendants' failure to provide heat and elevator service caused the plaintiff's business serious harm since heat was necessary to the success of plaintiff's manufacturing process and freight elevator service was necessary for plaintiff's transport of large bales of fabric weighing several hundred pounds to and from the basement storage area. While,

---

* A "heat transfer" is a kind of decal which holds a design which may be transferred to fabric.

for the reasons stated by the trial court in its decision, the plaintiff is not entitled to recover on a theory of unjust enrichment, or to recover punitive damages, or damages for harassment pursuant to Real Property Law § 235-d, it is entitled to recover those damages it has sustained as a result of defendants' breach of the lease. In this regard, we find no merit in defendants' contention that the above-quoted exculpatory clause released them from all obligation to provide essential services. We think that the breadth of the exculpatory clause is significantly narrowed by paragraph 42 of the lease which, although permitting alterations for the purpose of converting the premises to residential use, specifically provides that "alterations and repairs shall be made at such time so as not to unreasonably interfere with tenant's use of the demised premises." Plainly, the defendants' conversion of the premises to residential use was not carried out in such a way that plaintiff's right not to have its use of the premises unreasonably interfered with was respected. Under these circumstances we do not think that defendants may claim the protection of the lease's exculpatory provision. We think it evident that plaintiff did not agree in the lease to countenance the extended and unreasonable interruption of essential services, predictably resulting in harm to its business, without remedy.

Turning now to the propriety of the specific amounts awarded the plaintiff, no significant issue is raised as to the awards for unrecouped flood damage and trucking and warehouse expenses. As to the $50,000 award for the additional expense of purchasing heat transfers, we agree with the plaintiff that the amount awarded bore no discernible relation of the proof. The proof credited by the trial court indicated that the plaintiff removed its silk-screen machines for the manufacture of heat transfers in 1980 after its experience during the winters of 1978-1979 and 1979-1980 disclosed that heat transfers could not be successfully manufactured in a cold (i.e., unheated) environment. As plaintiff could not efficiently manufacture its own heat transfers, it was forced to purchase them from outside manufacturers. The evidence showed that the cost of purchasing the transfers was $349,875, whereas had plaintiff been able efficiently to manufacture its own transfers, it could have done so at a cost of only $34,321. Plaintiff, therefore, proved damages in the amount prayed for in its complaint. The trial court apparently awarded a lesser amount because it was of the view that plaintiff could have mitigated its damages by retaining the silk-screen machines

for use during the warmer months. We do not think, however, that this form of mitigation was required as a condition of full compensation. It was plaintiff's judgment that the retention of a machine whose efficiency was seriously impaired by defendants' repeated failure to provide heat during the winter months, when most transfers were manufactured, would be uneconomical, especially in view of the fact that the silk-screen machine occupied 1,500 of the 4,000 square feet in plaintiff's premises. Under these circumstances, where retention of the machine might well have increased rather than reduced plaintiff's loss, it cannot be said that the mitigative effect of retaining the machine was so certain as to require the machine's retention as a condition of making plaintiff whole.

We think that the judgment appealed was in all other respects proper, with the notable exception of its award of rent and use and occupancy to the defendants. The freight elevator was absolutely essential to plaintiff's beneficial enjoyment of the premises. Its removal by the defendants in violation of their obligations under the lease and, incidentally, in violation of two court orders, constituted an actual partial eviction suspending plaintiff's obligation to pay rent or use and occupancy *(see, 132 Spring St. Assocs. v Helversen Enters.,* NYLJ, Mar. 1, 1989, at 22, col 4; *Broadway-Spring St. Corp. v Berens Export Corp.,* 12 Misc 2d 460). Concur—Murphy, P. J., Asch, Kassal and Wallach, JJ.