OPINION OF THE COURT
Joan B. Lobis, J.
In this commercial nonpayment proceeding petitioner is the assignee of a lease for portions of a premises at 24-36 Watts Street in New York City. Respondent’s pizza and coffee shop occupies a portion of the area covered by the above-mentioned lease pursuant to a separate lease agreement which indicates *44 that the premises are to be used for the sale and service of pizza. At issue is the effect of a series of leaks into the shop on the tenant’s duty to pay rent. Although the amount of rent owed prior to February 1990 is disputed, respondent admits not paying rent from February of this year at the rate of $3,418.76. A motion to amend to conform the pleadings to the proof is granted and the petition and answer are amended through the date of trial.
Respondent is a small shop that caters to taxi drivers, other transient workers and students in the area. Its busiest times are the early morning breakfast hour, lunchtime and the after-school period. Apparently, water from the bathroom of the residential apartment directly above has been leaking into the kitchen of the coffee shop since August of 1989. The frequency and severity of the leak has varied. The landlord undertook repairs in the fall or early winter, but leaks began again in January of 1990. The landlord’s agent testified that it was finally determined that the source of the leak was the shower in the apartment above, and a new bottom to the shower was installed sometime in early June 1990.
Respondent’s witnesses testified credibly that they were forced to periodically close the store to mop up the water. Although the landlord’s witnesses claimed they did not see any evidence of a leak, repairs were done and the landlord’s observations of the operation of the store were infrequent. Respondent established that business was curtailed because of the presence of leaks. Respondent testified to a major problem in January when water was all over the shop. Although another leak of this magnitude apparently did not reoccur, minor leaking occurred with regularity. From May of this year through the time of trial the problem occurred several times a week for 45 minutes to one hour. The leak affected the area around the grill making preparation of food impossible, and forcing the respondent to close the shop until it was cleaned up.
It is clear that the defense of a breach of the warranty of habitability is not available to respondent. The warranty of habitability contained in Real Property Law § 235-b is applicable only to residential tenants. But the landlord cannot recover the full amount of rent in a commercial setting if the tenant has been actually or constructively evicted from either the whole or a part of the leasehold (see, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77 [1970]; Fifth Ave. Bldg. Co. v Kernochan, 221 NY 370 [1917]). An eviction has *45 been defined by the Barash court as "a wrongful act by the landlord which deprives the tenant of the beneficial enjoyment or actual possession of the demised premises”. (Barash v Pennsylvania Term. Real Estate Corp., supra, at 82.) An actual eviction takes place when acts of the landlord cause a physical expulsion or exclusion from the premises. A constructive eviction occurs when there is an abandonment by the tenant because the continued beneficial use of the premises is impossible. In other words, in an actual eviction the tenant is physically unable to occupy the space, but a constructive eviction happens because the tenant has been forced to vacate.
It is well settled that an actual eviction can be partial or total. Examples of partial actual eviction are: lost use of a vault space (Fifth Ave. Bldg. Co. v Kernochan, 221 NY 370 [1917], supra); lost use of an easement (487 Elmwood v Hassett, 107 AD2d 285 [4th Dept 1985]); lost access to a freight elevator (132 Spring St. Assocs. v Helversen Enters., NYLJ, May 18, 1990, at 21, col 1 [App Term, 1st Dept]; Broadway-Spring St. Corp. v Berens Export Corp., 12 Misc 2d 460); loss of light and air (Schulte Realty Co. v Pulvino, 179 NYS 371 [App Term, 1st Dept 1919]); and loss of an entrance (Seigel v Neary, 38 Misc 297 [App Term 1902]).
Courts have held that constructive evictions have occurred where there was a loss of ventilation (Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77 [1970], supra); proximity to an open sewer (Sully v Schmitt, 147 NY 248 [1895]); persistent harmful and offensive odor (Tallman v Murphy, 120 NY 345 [1890]); defective plumbing (Lathers v Coates, 18 Misc 231 [App Term 1896]); and water leaks (Rahman v Sylvester, NYLJ, Sept. 18, 1989, at 25, col 5 [Civ Ct, Kings County]).
Until several recent cases it was generally held that no constructive eviction could be found if the leasehold had not been totally abandoned. Therefore, even where the tenant was constructively evicted only from part of the premises, the tenant would have to abandon the entire premises in order to have redress in a summary proceeding. Where the tenant had nowhere else to go, he or she was not only relegated to make do with only a portion of the premises, but was also relegated to a lengthy plenary proceeding for relief. Thus a landlord could create or allow a condition to render any part of the premises untenantable with impunity without any effect on the landlord’s ability to collect rent. The Appellate Division, First Department, in the case of Minjak Co. v Randolph (140 AD2d 245, 248 [1988]), however held that "the tenants were *46 entitled to avail themselves of the doctrine of constructive eviction based on their abandonment of a portion of the premises.” Minjak involved a commercial lease for loft space, used for combined commercial and residential purposes, in which the tenant was unable to use that portion of the space set aside as a music studio due to dust and other problems created by petitioner’s construction in the building. In holding that relief was available for partial constructive eviction, the Minjak court carefully pointed out that the rule of constructive eviction — derived from Edgerton v Page (20 NY 281 [1859]) — is not that the tenant is barred from relief unless he has entirely abandoned the premises, but rather is barred from relief where he occupies the entire premises. As the Minjak court was ineluctably led to conclude, nothing in this rule is contrary to a holding that where a partial abandonment has been necessitated, there is a partial constructive eviction.
Certainly no basis exists for allowing the defense in commercial tenancies which include residential use, and not in ordinary commercial tenancies (see, 114 Fifth Ave. Assocs. v Satnet Inc., NYLJ, Aug. 14, 1989, at 25, col 6 [Civ Ct, NY County]). And indeed, nothing in Minjak (supra) would indicate such an intent by the Appellate Division. The court’s reasoning is based on the need to provide relief where the wrongdoing of the landlord has necessitated an abandonment of some portion of the premises. No mention is made of the residential nature of the tenancy as an essential aspect of the court’s holding. In fact, though Minjak deals with a situation including both commercial and residential aspects, the portion of the premises which were abandoned in that case was the music studio — not the residential portion of the loft. In addition, references to Mr. Page’s injury "in the prosecution of his business” in Edgerton v Page (supra, at 282), on which the Minjak court leans, would seem to indicate a commercial tenancy there. While the court in Edgerton did not find that a partial constructive eviction had occurred, that finding was based entirely on the fact that the defendant had never abandoned any part of the premises. The underlying implication that had there been an abandonment of some portion of the premises the court would have found a partial constructive eviction, is quite clear.
It was not disputed that the petitioner was aware of the reoccurrence of the leak as of January 1990, and had a duty to repair the leak. The leak was not corrected. Respondent *47 was deprived of the beneficial use of the tenancy since the leak was primarily around the grill area, preventing respondent from being able to prepare or serve food, and thus was prevented from operating as a restaurant. Respondent’s repeated need to close the shop is in essence a partial abandonment of the premises. The record establishes however that this did not occur with sufficient frequency to amount to an abandonment until May 1990.
Petitioner is therefore entitled to a judgment of possession and for rent arrears in the amount of $3,418.76 for the months of January, February, March and April for a total of $13,675.04, plus arrears for the period of July 1989 through December 1989 totaling $4,526.16 for a total money judgment of $18,201.20. Warrant stayed five days after service of a copy of the judgment with notice of entry and filing proof of service with the clerk of court. Petitioner’s request for legal fees is denied since respondent prevailed in part. Respondent’s counterclaim is denied since there is no reciprocal right to attorney’s fees absent statute or agreement.