OPINION OF THE COURT
Michael D. Stallman, J.
Respondents move by preanswer motion to dismiss this holdover proceeding; petitioner cross-moves for leave to discontinue without prejudice. At issue is the propriety of this residential holdover eviction proceeding based on a conditional limitation triggered by nonpayment of rent.
FACTS
On or about July 1, 1996, respondents entered into a lease with petitioner for the premises, the 6th and 7th floors in the building located at 1009 Fifth Avenue, New York, New York, for a term of seven years. The lease required petitioner to undertake substantial construction to customize the premises for respondents. Respondents withheld rent and contended that petitioner failed to substantially complete the required improvements by failing to provide, inter alia: (1) a mechanical privacy blind/sunscreen for the seventh floor atrium; (2) adequate heat, insulation and air conditioning; (3) functioning elevator, handrails, and guardrails; (4) functioning toilets; and (5) smooth floors.
Pursuant to a notice of default dated September 15, 1997, petitioner alleged that respondents owed rent for the period April 1997 through September 1997 in the monthly amount of $15,000. Respondents contend that no rent is owed, inter alia, because the construction was not substantially completed. Thereafter, by service of a notice of cancellation and termination of lease, petitioner sought to terminate the underlying tenancy effective October 17, 1997, on the ground that respondents failed to pay rent as due. On or about October 29, 1997, petitioner commenced this summary proceeding, alleging that respondents are wrongfully holding over after the expiration of their term.
Respondents seek dismissal, asserting that public policy prevents termination of a residential lease for nonpayment of *347 rent. Respondents argue that to permit petitioner to maintain a holdover proceeding would frustrate their rights (1) to pay the amount of rent, if any, ultimately found to be due, in order to avoid a forfeiture, and (2) to raise warranty of habitability defenses. Respondents also assert that petitioner lacks a certificate of occupancy.
I
Paragraph 23 of the lease provides:
“Tenant’s default. A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:
“(1) Failure to pay rent or added rent on time, three (3) days * * *
“If Tenant fails to cure the default in the time stated, Landlord may cancel this Lease by giving tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than ten (10) days after the date of the notice. On the cancellation date in the notice the Term of the Lease shall end.
“Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must beg to cure within that time and continue diligently until cured.” (Emphasis supplied.)
Paragraph 23 of the lease constitutes a conditional limitation. Its language provides that, if a notice of default were sent, the lease would automatically expire on the termination date fixed in the notice. (See, Matter of Ranalli v Burns, 157 AD2d 936; Perrotta v Western Regional Off-Track Betting Corp., 98 AD2d 1.)
Once the three-day cure period lapses, the lease has come to an end. “There is nothing the tenant can do to revive it. [The tenant] cannot recoup any rights by curing the default, because the landlord is not proceeding on a default. Nor, can equity relieve the tenant from the default; for, the lease is at an end.” (2 Rasch, New York Landlord and Tenant — Summary Proceedings § 23:25, at 185 [3d ed]; see also, South St. Seaport Ltd. Partnership v Jade Sea Rest., 151 Misc 2d 725, citing TSSSeedman’s, Inc. v Elota Realty Co., 72 NY2d 1024.) Moreover, since the lease expires according to its terms, it is not subject to judicial revival. (See, First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630, 637.)
*348 By bringing a holdover proceeding based on a conditional limitation triggered by nonpayment of rent, petitioner seeks to bring about a forfeiture. Thus, “[t]he wrangle over which summary proceeding — nonpayment or holdover — should have been brought is more than a mere conflict over the correct remedial avenue”. (Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 320, affd 84 AD2d 700, affd 56 NY2d 1025 [1982].)
The law disfavors automatic forfeitures of residential tenancies. (See, Sharp v Norwood, 223 AD2d 6, 11 [1st Dept], affd 89 NY2d 1068.) If nonnuisance chronic late payment of rent asserted as a substantial violation of tenancy is not a permissible basis of a holdover proceeding (Sharp v Norwood, supra) because it would provoke a forfeiture, then the instant conditional limitation is also impermissible.
II
Parties to a lease may not waive the protection of the warranty of habitability. Real Property Law § 235-b (2) voids as contrary to public policy “[a]ny agreement by a lessee or tenant * * * waiving or modifying” the tenant’s rights under the warranty of habitability. (See also, Fraley Realty Corp. v Stocker, 115 Misc 2d 52 [agreement by a tenant to paint and renovate an apartment void as an impermissible attempt by landlord to evade the warranty of habitability]; Vanderhoff v Casler, 91 AD2d 49 [provision in lease which obligated tenant to provide written notice to landlord of any dangerous or defective condition in the premises held void].)
As the court (Saxe, J.) noted in 520 E. 86th St. v Leventritt (127 Misc 2d 566, 570): “The only meaningful weapon a tenant has against a landlord for refusing to maintain the premises in a habitable condition is to withhold rent. If A tenant fears that withholding rent could cause lease termination automatically, a tenant would be deterred from asserting a breach of warranty of habitability.”
The papers submitted indicate that there are serious factual questions regarding physical conditions in the premises, arising both before and during the litigation, that relate to the warranty of habitability. The type of conditional limitation at issue effectively discourages a tenant from withholding rent for a violation of the warranty of habitability. It is functionally equivalent to a contractual modification and thus violates Real Property Law § 235-b.
Moreover, given the overriding legislative purpose of preserving the city’s housing stock (CCA 110) and assuring both ten *349 ants and Judges an effective means of addressing breaches of the warranty of habitability, it would be incompatible with Real Property Law § 235-b to permit a lease to terminate automatically and irrevocably upon nonpayment of rent.
Ill
It is hornbook law that parties may not contract contrary to public policy. (Matter of Brown v Supreme Ct. of Ind. Order of Foresters, 176 NY 132, 137.) Given the modern view of the lease as a contract rather than merely a conveyance of interest in real property (see, Geraci v Jenrette, 41 NY2d 660), there is no reason why the general contract rule should not be applicable to a lease provision that violates public policy.
In 205 W. End Ave. Owners Corp. v Adler (NYLJ, Nov. 2, 1990, at 21, col 4) and 61 E. 72nd St. Corp. v Zimberg (161 AD2d 542), the courts held that in the case of a residential tenancy, a contractual provision that permits the landlord to terminate the lease based on nonpayment of rent (other than in chronic nonpayment situations) is void because it violates public policy. In Adler, Appellate Term reasoned that the enforcement of such a provision interferes with a tenant’s opportunity to cure rent defaults by payment of the amount of rent ultimately found due upon an adverse judgment and frustrates a tenant’s right to litigate habitability defenses. Moreover, Appellate Term stated that a landlord should not be permitted to prosecute an ordinary nonpayment case in the guise of a holdover and thereby precipitate an irrevocable forfeiture.* (205 W. End Ave. Owners Corp. v Adler, supra.)
Petitioner argues that respondents’ reliance on the above-cited cases is misplaced because the subject apartment is not a cooperative apartment, as in Zimberg (supra) and Adler (supra), nor is it subject to rent regulation. In short, petitioner argues that Zimberg and Adler must be limited only to the precise type of housing accommodation litigated in each case and that those cases are not applicable to unregulated luxury housing. Moreover, in oral argument, petitioner argued that because the subject premises were to be renovated according to a unique agreement negotiated between the parties, the rules *350 generally applicable to rental housing should not be applied here.
Petitioner’s argument is without merit. The appellate courts in Zimberg (supra) and Adler (supra) referred to residential tenancies and did not limit their holdings only to cooperative apartments or rent-regulated accommodations. Indeed, in Adler, the Appellate Term drew the distinction between residential and commercial tenancies, noting that a conditional limitation based on nonpayment, like the one at bar, has been sustained as enforceable only in the commercial context. (See, Grand Liberte Coop, v Bilhaud, 126 Misc 2d 961.)
The law is clear that the warranty of habitability does not apply to commercial tenancies. (See, Manhattan Mansions v Moe’s Pizza, 149 Misc 2d 43.) Conversely, all residential tenancies, whether luxurious or not, are protected by the same warranty of habitability (see, Solow v Wellner, 86 NY2d 582). Accordingly, petitioner’s assertion that this unique luxury residential tenancy is “more similar to that of a commercial tenancy” (petitioner’s reply affirmation 31) and its contention that a conditional limitation may thus be enforced, are without basis. Adler (supra) cited 520 E. 86th St. v Leventritt (supra) with approval; in Leventritt, the court (Saxe, J.) drew a sharp distinction between residential and commercial premises. Despite petitioner’s position as expressed in oral argument, it is irrelevant in this context that the tenant is an attorney and that he may have participated in the negotiation of the underlying lease. (See, East 11th St. Assocs. v Breslow, 174 Misc 2d 994.)
IV
Petitioner cross-moves for leave to discontinue this proceeding without prejudice pursuant to CPLR 3217 (b). Petitioner concedes that the premises do not have a currently effective certificate of occupancy and asserts that its application has been delayed because the file relating to the premises was stolen from the Department of Buildings.
Petitioner’s arguments in support of its cross motion do not address the structural problem posed by this case, viz., it is a holdover proceeding based on a conditional limitation triggered by nonpayment of rent. As stated previously, this proceeding may not be maintained as a matter of law because enforcement of the conditional limitation at issue violates statute and public policy.
The authority to grant or deny a party’s application for a voluntarily discontinuance rests within the sound discretion of *351 the nisi prius court; a party cannot be compelled to litigate, absent special circumstances or demonstration of prejudice flowing from discontinuance. (Classic Residences v O’Hara-Forster, NYLJ, July 21, 1992, at 21, col 3 [App Term, 1st Dept], citing Hockmeyer v Bloch, 159 AD2d 444.)
Here, respondents’ motion to dismiss, which challenges the essence of petitioner’s claim, was brought first; petitioner cross-moved in response. Were petitioner to be permitted to discontinue this proceeding without prejudice, and bring the same type of holdover proceeding again (as petitioner indicated to the court in oral argument), respondents would be prejudiced. Indeed, respondents would be required to defend the next proceeding, at additional expense, on the same grounds already litigated here. The issue raised in respondents’ motion to dismiss is not academic, premature, speculative or unnecessarily decided here. Having expended the time and legal fees to litigate the issue, the parties are entitled to a decision. The undisputed lack of a current, valid certificate of occupancy is an independent basis for dismissal. (Multiple Dwelling Law § 302 [1] [b].) Accordingly, petitioner’s cross motion for leave to discontinue this proceeding is denied.
Whether the alterations were substantially completed is a factual question that cannot be decided on the papers submitted and is academic here; it can be raised elsewhere, in a nonpayment or other appropriate proceeding.
Finally, petitioner’s request in the “wherefore” clause, for an award of attorney’s fees, is denied. Not only is this holdover proceeding dismissed with prejudice, but the relief sought was not properly sought in the notice of cross motion. Respondents have alluded to the cost of their legal fees but have not sought an award of such fees at this time.
Accordingly, respondents’ motion to dismiss is granted and this proceeding is hereby dismissed with prejudice.

 The Appellate Division and Appellate Term clearly viewed the limited 10-day postjudgment cure provision of RPAPL 753 (4) as insufficient to overcome the policy objections stated in Zimberg (supra) and Adler (supra). Notwithstanding RPAPL 753 (4), the mere existence of a conditional limitation could have a chilling effect on a tenant. It is not material that the respondents here (like those in Zimberg and Adler) were not so chilled.