Chaitman v Moezinia (2019 NY Slip Op 09396)





Chaitman v Moezinia


2019 NY Slip Op 09396


Decided on December 26, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019

Sweeny, J.P., Richter, Kapnick, Kern, Singh, JJ.


9886A 653037/12 9886

[*1] Jennifer Chaitman, et al., Plaintiffs-Appellants,
v
Francis Moezinia, et al., Defendants, FSM Holdings II, LLC, et al., Defendants-Respondents. 
[And Third-Party Actions]


Chaitman LLP, New York (Helen Davis Chaitman of counsel), for appellants.
Bonner Kiernan Trebach & Crociata LLP, New York (Alan R. Levy of counsel), for respondents.



Orders, Supreme Court, New York County (Melissa Crane, J.), entered on or about August 7, 2018, which, to the extent appealed from as limited by the briefs, denied plaintiffs' motion for partial summary judgment on the claim for a full rent abatement, and granted defendants FSM Holding II, LLC, DMZ III, LCC and SM 84th TIC, LLC's motion for summary judgment dismissing the claims for a full rent abatement and lost profits as against them, unanimously modified, on the law, to deny defendants' motion as to the claim for a full rent abatement to the extent predicated upon paragraph 26 of the lease, and otherwise affirmed, without costs.
While the motion court correctly denied plaintiffs' motion for partial summary judgment on the claim for a full rent abatement, it should not have dismissed the claim to the extent it was based on paragraph 26 of the lease, which provides that "if more than thirty percent (30%) of the demised premises is damaged or affected thereby and the demised premises cannot be open for business to the general public, then all rent and additional rent shall be fully abated until it can be opened for business." Issues of fact exist as to the percentage of the premises that was affected by defendants' negligent renovations. Plaintiffs were not precluded from asserting this claim on the ground that the plain meaning of "open for business to the general public" included the situation in which, due to the renovations, the business remained open to existing clients but could not accept new clients.
The claim for lost profits, however, was properly dismissed. General Obligations Law § 5-321 provides:
"Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable."
The exculpatory clauses in the lease relieving defendants of liability for lost profits resulting from their own negligence are not void under General Obligations Law § 5-321 because lost profits are distinct from property damage (see e.g. Duane Reade v 405 Lexington, L.L.C., 22 AD3d 108, 112 [1st Dept 2005] [General Obligations Law § 5-321 does not void the waiver of [*2]business loss liability because claims for business losses are "wholly distinct and separate from property damage" claims]; Periphery Loungewear v Kantron Roofing Corp., 190 AD2d 457, 461 [1st Dept 1993] ["If we accept plaintiff's argument that injuries to . . . property' include loss due to business interruption, then General Obligations Law § 5-321 might very well invalidate [the exculpatory clause] of the lease. But . . . from the perspective of insurance coverage, the concept of business interruption loss is one wholly distinct and separate from property damage."]. This Court has repeatedly enforced exculpatory clauses related to business interruption losses (see After Midnight Co. LLC v MIP 145 E. 57th St., LLC, 146 AD3d 446, 447 [1st Dept 2017], and cases cited therein).
Moreover, paragraph 23 of the lease amendment specifically provides that "[n]otwithstanding anything to the contrary . . . Tenant waives, to the full extent permitted by law, any claim for consequential or punitive damages in connection [with damage to Tenant's property]" (emphasis added)[FN1]. In view of this unequivocal exculpatory clause stating that no other provision in the lease shall entitle the tenant to consequential damages, the claim for lost profits is barred (see generally Board of Mgrs. of the Saratoga Condominium v Shuminer, 148 AD3d 609, 610 [1st Dept 2017]; Periphery Loungewear, 190 AD2d at 461).
Contrary to plaintiff's argument, the separate provision in the lease amendment that requires the landlord to "use its reasonable efforts to minimize the inconvenience to, annoyance and injury to Tenant's business and its use and enjoyment of the demised premises" does not override the exculpatory clause in this lease amendment (cf. Duane Reade v Reva Holding Corp., 30 AD3d 229, 235 [1st Dept 2006] [plaintiff's claim for business interruption losses permitted where lease clause that provided that owner shall not unreasonably interfere with tenant's business took precedence over exculpatory clause that provided that "[e]xcept as specifically provided in Article 9 or elsewhere in the lease" there shall be no liability to tenant for injury to business, and there was a provision elsewhere in the lease]; Union City Union Suit Co. v Miller, 162 AD2d 101, 102, 104 [1st Dept 1990] [plaintiff's claim for damages arising out of failure of landlord to provide heat and freight elevator service permitted because the exculpatory clause stating that "[e]xcept as specifically provided in Article 9 or elsewhere in this lease" there shall be no liability to the tenant for injury to business was significantly narrowed by another clause providing that alterations to premises shall be made at such time so as not to unreasonably interfere with tenant's use of the premises], lv denied 77 NY2d 804 [1991]).
Since the exculpatory clause in this lease amendment, unlike the clauses in Duane Reade [*3]and Union City, overrides any other clause in the lease amendment that could be interpreted as imposing liability on the landlord for lost profits, that claim was correctly dismissed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK



Footnotes

Footnote 1:Although the parties do not address whether the damages for lost profits in this case would be general or consequential damages, we conclude that the damages are consequential because plaintiffs are seeking lost profits arising from "collateral business arrangements" as opposed to general damages directly flowing from a breach of the lease (see generally Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d 799, 807-808 [2014]).