OPINION OF THE COURT
David B. Saxe, J.
Must an alleged breach of a substantial obligation of a lease, that forms the basis of a notice to cure, be actually capable of being cured in order to sustain the petition in the ensuing summary holdover proceeding?
The respondent tenant contends that since the lease provides for a right to cure within a specified time period, a notice to cure, such as here, that is based upon past conduct *752 that cannot be remedied, is the furnishing of an illusory right, resulting in an impermissible forfeiture. In effect, the tenant says that it was never properly served with a notice to cure since the notice is nothing more than a disguised notice to terminate the tenancy.
I find no merit to the respondent’s contention. First, the landlord claims that several plausible alternatives were available to the tenant to cure the violation including some means to insure that the rent would be paid in a timely fashion in the futurte. Conceivably, this might have included increasing the amount of the security deposit or adding a guarantee to the existing obligations under the lease. None of this was done or attempted.
Nevertheless, it is doubtful whether these acts, if performed, would have “cured” the past violations. While their completion or undertaking might have assuaged the landlord’s insecurity regarding the tenant’s prospective ability to perform its rent paying obligations (cf. Uniform Commercial Code, § 2-609), the furnishing of assurances of future performance would not cause past breaches to be remedied. Therefore, the tenant is correct in its contention that it could not have cured the alleged violation.
But, there is no contractual or statutory right inuring to a party, of a means to cure. The fact that the lease provides time for a cure does not necessarily imply that a means or method to cure must exist in every case. In fact, it has specifically been held in a residential-holdover proceeding involving similar allegations that a notice to cure was inapplicable to such á violation (974 Realty Corp. v Led-ford, 9 Misc 2d 240. [App Term, 1st Dept]; Sanders v Plummer, NYLJ, July 23, 1976, p 9, col 3 [App Term, 2d Dept]). I hold that the notice to cure here is therefore valid.
The second issue that I must resolve is whether the lessee’s conduct here in failing at times to pay rent when due constitutes a breach of a substantial obligation of the lease. It has been uniformly held that such conduct may indeed constitute such a violation. (Stern v Harrold, 12 Misc 2d 73 [App Term, 1st Dept]; 2564 Company v D'Addario, 35 Misc 2d 176 [App Term, 1st Dept]; Zalaznick v Imbembo, 35 Misc 2d 164 [App Term, 1st Dept].) The *753 obligation to pay rent under a lease in a timely manner is a primary obligation of a tenancy. (Sanfilippo v Coster, 91 NYS2d 738, 740 [Supreme Ct, Kings County].)
Finally, must the landlord establish a continuous course of conduct of nonpayment of rent by demonstrating the commencement of numerous nonpayment proceedings? Many cases seem to indicate that this is the predicate for establishing a breach of this substantial obligation. (See, e.g., 974 Realty Corp. v Ledford, supra.)
Nevertheless, I hold that the test for determining whether a substantial breach of the tenancy is established due to repeated tardy rent payments is not to be ascertained alone by a comparison of the number of summary proceedings commenced to the total number of months expended in the lease term. Certainly such a comparison is important in establishing the landlord’s insistence upon compliance with its right to rent when due under the lease. But, it is also clear that where, as here, the number of dispossess proceedings is small compared to the number of months expended in the lease term, this fact alone will not defeat the landlord’s attempt to prove a breach. This court eschews a mechanistic rule in determining legal rights and obligations (cf. 269 Assoc. v Yerkes, 113 Misc 2d 450).
In determining whether the tenant’s conduct constitutes a breach of substantial obligation of the lease, an examination of the totality of the circumstances must be examined. Here, the landlord has commenced three nonpayment summary proceedings against the tenant in the approximately four and one-half years of their relationship. This fact alone would not appear to indicate a significant breach of payment obligations by the tenant. More to the point, however, is the consistent failure of the tenant to meet its rent obligations from the very inception of its occupancy.
The essential facts are as follows: Annex Camera, the respondent tenant entered into a lease agreement with the Louis Joy Corporation on October 11, 1977. The lease termination date was July 31, 1985. The leased premises consist of a store and a basement located at 113-25 West 33rd Street, New York, New York. Thereafter, Louis Joy Corporation assigned its interest to National Shoes.
*754 From the time that the tenant entered into possession under its lease it has been in arrears in the payment of its rent. It is uncontroverted that the tenant had on one occasion paid part of the arrears in rent after being served with a three-day notice, the legal predicate to a summary nonpayment proceeding. On two separate occasions, checks were returned for insufficient funds. As previously indicated, since 1978 until March 5, 1982, the date on which the notice of termination was served, the landlord has commenced three summary nonpayment proceedings. After obtaining default judgments in two instances, the tenant managed to vacate the defaults, restore the actions to the Trial Calendar and to thereafter settle the proceeding by means of written stipulations under which the tenant agreed to eliminate its arrears. For the most part, the stipulations were consistently breached until the tenant had no choice but to face eviction for nonpayment. In short, the rental history of this tenant has been one of chronic late payment. Payment has been made only after repeated threats and, indeed, after litigation has been commenced. Defaults have occurred even after the landlord and tenant have agreed to stipulations of settlement of the nonpayment matters. Therefore, I find that from the very beginning of its tenancy, Annex Camera has failed to comply with its obligations to pay timely rent when due under its lease.
The respondent’s conduct is not excusable on the grounds that its failure to pay rent is an isolated occurrence in an otherwise unblemished tenancy (cf. Weil v Chandler, 38 Misc 2d 58 [App Term, 1st Dept]). The conduct of the tenant here has been persistent and continuous.
The tenant’s predicament is due in part to insufficient revenue to meet its operating expenses. At trial, Mr. Amin, the president of the respondent corporation painted a picture of a family business, where each member works long hours and draws limited salaries from the business. Their devotion and hard work is admirable. But, the landlord is not their partner and should not be expected to carry the burden of the respondent’s financial problems. Conversely, if the respondents were enjoying a banner season, the *755 landlord would, of course, not be entitled to raise the monthly rent reserved under the lease.
The respondent has proven itself to be an unworthy tenant from the standpoint of paying rent when due. The petitioner is entitled, as a consequence of the respondent’s serious breach, to a judgment of possession of the subject premises. A warrant shall issue immediately with a stay of its execution through September 30, 1982 providing that respondent pay all current use and occupancy at the rate set forth for rent under the lease for July, August and September of 1982 by the 10th day of each respective month. Also, the respondent shall remain current on all other rent or use and occupancy obligations incurred prior to July in order to be entitled to the stay of enforcement of the warrant. Any such arrears shall be paid by the respondent within 10 days of the date of service of a copy of this decision. If the respondent breaches any of these obligations, then, without further notice, the stay of execution of the warrant shall be vacated immediately.
The clerk is directed to prepare and enter a final judgment of possession in accordance with this decision.