[643 NYS2d 39]

PETER H. SHARP et al., as Executors of PETER J. SHARP, Deceased, Appellants, v ANGELA NORWOOD et al., Respondents.

First Department, May 21, 1996

APPEARANCES OF COUNSEL

*Magda L. Cruz* of counsel *(Sherwin Belkin* and *Paula Elaine Kay* on the brief; *Belkin, Burden, Wenig & Goldman, L. L. P.,* attorneys), for appellants.

*Robert E. Levy* for Angela Norwood, respondent.

**OPINION OF THE COURT**

TOM, J.

We affirm the Appellate Term and reject petitioner's contention that a rent-controlled tenant who has resided in the same apartment for 33 years and, over the course of the previous nine years, paid her rent on the average of two weeks late, while accumulating absolutely no arrears, has committed a nuisance and, thereby, has forfeited her leasehold.

Respondent tenant Angela Norwood, and her former husband John Norwood, commenced occupancy of apartment 4F in the building designated as 444 East 52nd Street, New York, New York, on or about November 1, 1961 pursuant to a written lease agreement. The apartment building subsequently was converted to cooperative ownership, and respondent chose not to purchase the proprietary shares allocated to her unit, which continued to be subject to the City Rent Law (Rent Control) and the New York City Rent and Eviction Regulations. Petitioners are the successors-in-interest (collectively, the landlord) to Peter Sharp, now deceased, who was one of the owners of the building as well as the holder of the unsold shares for respondent's cooperative unit.

A "Notice of Termination" was served by the landlord upon tenant asserting, *inter alia*, that the tenant engaged in a course of conduct pursuant to which she tendered rent payments in an untimely manner for a period including November 1990 through March 1992. The landlord thereafter commenced the underlying holdover proceeding.

The tenant moved to dismiss the proceeding, which relief was granted by Judge Fisher-Brandveen, then of the Civil Court. Judge Fisher-Brandveen held, *inter alia*, that only two nonpayment proceedings had been commenced in the prior 15 years that the tenant had lived in the premises, and that the termination notice failed to indicate any arrearages.

The landlord appealed and the Appellate Term of the Supreme Court, First Department, unanimously reversed the order and reinstated the petition. The Appellate Term held that: "Chronic late payment and nonpayment of rent *may* constitute a nuisance warranting eviction if not adequately explained by the tenant. * * * Landlord's petition and the notice of termination * * * set forth sufficient facts to state a cause of action for nuisance. * * * *In reinstating the petition*

*for trial, we express no view as to the ultimate disposition of the matter."* (Emphasis added.)

The matter thereafter went to trial before Judge Arthur Scott, who, after trial, dismissed the proceeding, finding no evidence of willful, harmful or unjustified conduct on the part of the tenant that would rise to the level of a nuisance. The court, accepting the tenant's explanation that rent was paid late due to problems she was having with her alimony payments, stated: "Clearly, a woman who is entitled to moneys from her ex-husband by court order and fails to receive same in a timely fashion cannot be considered to have engaged in willful conduct as to warrant a nuisance when her rent is tendered late."

The landlord appealed, and in a split decision (Justices Stanley Parness and Edith Miller in the majority and Justice William P. McCooe dissenting), the Appellate Term affirmed Judge Scott's order. The majority held, *inter alia*, that the tenant's actions were not willful, unjustified or intended to harass landlord and "did not rise to the level of a nuisance which would warrant on *[sic]* eviction." The Appellate Term granted landlord's motion to appeal its decision and order.

The holdover petition at bar is predicated upon the ground that the tenant was "committing or permitting a nuisance", pursuant to New York City Rent and Eviction Regulations (9 NYCRR) § 2204.2 (a) (2), by continually tendering late payment of rent.

In order to establish that tenant's untimely rent payments constituted a nuisance, the landlord must demonstrate that it "was compelled to bring numerous nonpayment proceedings within a relatively short period and that the tenant's nonpayment was willful, unjustified, without explanation, or accompanied by an intent to harass the landlord" (*25th Realty Assocs. v Griggs*, 150 AD2d 155, 156).

Since landlord is required to prove that they were compelled to bring numerous nonpayment proceedings to establish a nuisance, those proceedings must be shown to have been brought in good faith to collect outstanding rent and not as a pretense to meet the definition of nuisance for the purposes of bringing a holdover action.

In the case at bar, Judge Fisher-Brandveen, in dismissing the petition, found that the landlord commenced only two nonpayment proceedings within the prior 15 years. The first action was brought in December 1991, and, based on the record, it appears that such proceeding was commenced shortly

after the first of the month, purportedly to collect the December rent. This action was discontinued after tenant paid the December rent on December 19, 1991. Tenant asserts, and it is not disputed by landlord, that the December rent was paid before the petition was served. Since the nonpayment petition was served after rent was paid, landlord cannot be found to have been *compelled* to commence this action. The second action, which was commenced in February 1992, was never litigated because the wrong party was served. However, the February rent was paid on February 19, 1992. Landlord commenced the underlying holdover proceeding in March 1992.

The manner and timing in which those two proceedings were brought do not indicate a bona fide attempt by landlord to collect rent, but rather a woeful, transparent effort to bring this action within established case law regarding the number and immediacy of prior nonpayment proceedings needed for the purpose of bringing a holdover action based on nuisance. Therefore, the two prior nonpayment proceedings cannot serve as a predicate for the instant nuisance action, and the petition is dismissible on this ground.

In *Greene v Stone* (160 AD2d 367), this Court remanded a chronic nonpayment proceeding to the Civil Court, which had previously dismissed the proceeding, after trial, on the grounds that petitioner had only brought three nonpayment proceedings in the previous three years. In so concluding, we held that "the number of nonpayment actions commenced is relevant only in the context of the entire circumstances surrounding the alleged withholding of rent" (*supra,* at 368).

It is clear that there is no "magic number" of prior proceedings required, as each case is *sui generis*. In *25th Realty Assocs. v Griggs (supra)*, there were 11 nonpayment proceedings commenced within six years, with landlord prevailing in all the proceedings, and this Court reversed the grant of summary judgment and remanded the matter to give tenant an opportunity to explain his refusal to pay rent. In this matter, tenant has *never* refused to pay rent. The common thread which runs through these cases is that after reviewing the totality of the circumstances presented, a nuisance has been found to have been committed if it can be determined that the tenant chronically, and unjustifiably, refused to pay the rent when due and that as a result, the landlord was compelled to bring numerous nonpayment proceedings within a relatively short period of time (*cf., Classic Props. v Haight*, NYLJ, June 15, 1993, at 21, col 1).

During the trial of this action, tenant explained the reason for the late payment of rent and testified that she had moved into the apartment with her husband, but had been divorced in 1970 and, for a number of years following, the rent was paid to the landlord by her ex-husband's attorney. In 1988, the attorney stopped paying the rent and the tenant began to receive a correspondingly larger alimony check, which she used to pay the rent.

Tenant stated that the alimony check was due on the first of the month, as was the rent, but because the alimony check was often late, the tenant could not pay her rent on the first of the month. Further, the tenant maintained that because she was aware, through experience, that her former husband's checks did not always clear because of insufficient funds, she followed the practice of cashing the alimony check when she received it, buying a money order (which she always dated the first of the month), and paying the rent, in person, that same day at the landlord's management office. During the period upon which the Notice of Termination focuses, the rent was always paid in the month it was due and the tenant never carried a balance into the following month. The trial court credited tenant's testimony and no evidence has been presented by landlord which indicates otherwise.

The landlord's record indicates that during the 33 years tenant occupied the subject premises, she received 44 rent demands. The record further reflects that on average, the three-day notice was served on the 10th day of the month and, in some instances, rent demands were served when the rent was paid as little as three and five days late.

In viewing the totality of the circumstances presented, we conclude that the evidence at trial did not establish that the tenant's late payment of rent constituted a nuisance. The evidence herein does not indicate that the tenant's conduct was "willful, unjustified * * * or accompanied by an intent to harass the landlord" (25th Realty Assocs. v Griggs, supra, at 156) and, with regard to the fact that only two nonpayment proceedings were brought over the course of nine years, this simply does not warrant a finding of nuisance. Further, the two proceedings appear to have been brought as part of an attempt to bring this action within the definition of nuisance simply for the purpose of bringing this action.

The landlord also contends that six nonpayment proceedings were commenced against the tenant over the course of the nine-year period, although it appears, as found by Judge

Fisher-Brandveen, that only two such proceedings were commenced.

While we note that chronic late payment of rent may constitute a breach of a leasehold obligation, the instant holdover proceeding was not predicated upon such a breach. Rather, the underlying holdover petition is based solely on the ground that tenant committed or permitted a nuisance pursuant to section 2204.2 (a) (2) of the New York City Rent and Eviction Regulations and not upon the ground that tenant breached a leasehold obligation. It is quite probable that the landlord did not predicate this action upon a breach of a lease provision so as to avoid the remedial prescription of RPAPL 753 (4), which grants a 10-day stay for the tenant to cure the breach. By contrast, a nuisance found to be caused by chronic late payment of rent cannot be cured (*see, 301 E. 22nd St. Co. v Lampert*, NYLJ, July 2, 1984, at 13, col 5 [App Term, 1st Dept]).

Moreover, while a nuisance based on chronic late payment of rent also constitutes a breach of a substantial obligation of the lease, the type and degree of evidence required to establish a nuisance differs from the proof needed to show a breach of a leasehold obligation. Since the landlord chose to proceed by way of a nuisance in this proceeding, they are bound by the degree of proof needed to establish such claim. As stated above, to prove a case grounded upon a nuisance, the landlord must prove more than a mere pattern of late payment of rent, and in this case, landlord has failed to meet their burden of proof.

In addition, it is a well-settled equitable principle that the courts do not look favorably upon the forfeiture of leases (*Harar Realty Corp. v Michlin & Hill,* 86 AD2d 182, 188, *lv dismissed* 57 NY2d 607, 836; *57 E. 54 Realty Corp. v Gay Nineties Realty Corp.,* 71 Misc 2d 353, 354; *220 W. 42 Assocs. v Cohen,* 60 Misc 2d 983). Under the factual circumstances of this case, it would be inequitable to permit the landlord to forfeit respondent's rent-controlled tenancy and direct the eviction of this elderly tenant from the premises she occupied for over 33 years. We find this to be especially so during a time when affordable housing accommodations are a scarce commodity in this City.

The landlord, as well as the dissent, make much of the fact that the tenant "failed to pay her rent for months at a time", but, in fact, document only 11 times over the course of a 33-year, or 396-month, rental history where the rent was late 30 days or more with the last occurrence in July 1989. In those instances, nonpayment proceedings were not commenced and

the rent was eventually paid shortly thereafter. Since July 1989, tenant has paid her rent within the month that it was due.

Finally, while the landlord and the dissent characterize the tenant's defense as undocumented, the landlord's own case was certainly not better documented, or presented, on crucial points. By way of example, the landlord admittedly never issued rent receipts for the tenant's money orders, in clear violation of Real Property Law § 235-e. Although the tenant's money orders were always dated the first of the month, regardless of when she tendered the rent, the landlord placed no evidence before the court to establish with certainty when the tenant paid the rent within any given month. The rent payment history compiled by the landlord's employee, from records not in evidence, only indicates the date the landlord deposited the funds, not the date the rent was paid. There was testimony that rent was *usually* deposited the next day unless it was a weekend, or unless payment was made very early in the day. Clearly then, no one can say for certain how late the rent was, despite the fact that the basis of this proceeding is that the tenant paid her rent substantially after it was due.

In conclusion, tenant is a long-term (33-year) resident of her apartment who has paid the rent in the month it was due with relatively few exceptions. Further, there has been no evidence presented that the tenant intended to harass or injure the landlord or that the landlord was, in fact, in any way prejudiced by payment after the date reserved in the lease. Nor has it been demonstrated the landlord was *"compelled"* to bring repeated summary proceedings for nonpayment of rent (i.e., to force tenant to pay the rent) (*Ocean Farragut Assocs. v Sawyer,* 119 Misc 2d 712, 713 [emphasis added]; *see also, 25th Realty Assocs. v Griggs, supra,* at 156, citing numerous cases). Therefore, we cannot conclude that the tenant's conduct was so harmful or willful as to warrant forfeiture of this long-term rent- controlled tenancy.

Accordingly, the order of the Appellate Term, First Department, entered February 6, 1995, which affirmed the order of Civil Court, New York County (Arthur Scott, J.), entered on or about May 28, 1993, dismissing the underlying holdover proceeding, is affirmed, without costs.

MAZZARELLI, J. (concurring). Both the majority and the dissent agree that the chronic late payment of rent may constitute a nuisance warranting eviction, if not adequately ex-

plained (*Greene v Stone*, 160 AD2d 367). What divides the Court here is not what legal standard applies, but whether that governing legal standard was satisfied in this case. The trial court found that the landlord failed to establish a nuisance because the landlord failed to adequately establish the chronicity of tenant's lateness and that, in any event, the tenant had provided an adequate explanation for her late payments. A majority of the Appellate Term agreed.

In my view, the question presented on this appeal, which is before us by permission to appeal granted by the Appellate Term, when properly framed, is one which is a fact-laden determination. Thus, in reviewing the record, we must be careful not to jettison too quickly the factual findings of the trial court, which from its unique perspective, had the best opportunity to assess the credibility of the various witnesses. Moreover, in reviewing the Appellate Term's affirmance of the trial court's decision, it would be imprudent to ignore that court's considerable expertise in reviewing such matters and in determining whether there was sufficient evidence to satisfy the standard that that court itself articulated in an earlier appeal in this matter. Suffice it to say that there is an ample basis in the record to support the trial court's factual findings, and when those findings are accorded the deference due them, it cannot be said that the landlord met its burden of proving a nuisance. Accordingly, the order of the Appellate Term should be affirmed.

SULLIVAN, J. P. (dissenting). In this holdover proceeding based upon the tenant's chronic late payment of rent, month after month, over a period of nine years, which defaults repeatedly caused the landlord to serve monthly rent demands and to commence nonpayment proceedings, the landlord appeals from the affirmance, by a divided Appellate Term, of the dismissal, after trial, of the holdover proceeding. The petition to terminate the tenancy should be granted on the ground that the tenant's continuous late payment of rent constitutes a nuisance. Accordingly, I dissent. While the law abhors the forfeiture of a leasehold (*see, Tehan v Peters Print. Co.*, 71 AD2d 101, 106), it does not permit courts, in blind obeisance to the principle, to ignore the landlord's rights and relieve a tenant, who, since at least April 1983, has virtually never paid rent on time, of her obligations under the lease, thus requiring the landlord to bear the financial consequences, including the attendant legal expense, of the tenant's chronic and unjustifiable default.

The proceeding was commenced by the holder of the unsold shares and proprietary lessee[1] of apartment 4F, which is subject to the City Rent Law (Rent Control) and the New York City Rent and Eviction Regulations, at 444 East 52nd Street, in Manhattan, a cooperative apartment building. The legal regulated rent for the lease term preceding the commencement of this proceeding was $1,230.62 per month.

The tenant, with her now former husband, took occupancy of the subject apartment on or about November 1, 1961, pursuant to a written lease, executed by the husband and the landlord's predecessor-in-interest, which provided that rent was due "in equal monthly installments in advance on the first day of each month during said term * * * without any set-off or deduction whatsoever." In November 1990, subsequent to the tenant's succession to her former husband's rights under the lease (see, NY City Rent and Eviction Regulations [9 NYCRR] § 2204.6 [d]) and after her consistent failure to pay her rent on time, the landlord's attorney wrote to remind her of her lease obligation to pay rent timely, "In examining your recent rental history, my client finds that you are consistently paying rent in a manner *other* than it is called for in your lease. It is *not* acceptable for rent to be paid in the middle of the month or at the end of the month. Rather, rent is to be paid at the beginning of each month" (emphasis in original).

Nevertheless, the tenant remained indifferent to her obligation to pay rent on time. In the 17-month period preceding the commencement of this proceeding, the landlord was forced to serve 11 three-day rent demands on tenant. For the nine-year period from April 1983 to April 1992, 44 rent demands were served. In 1991, the year immediately preceding the commencement of this proceeding, the tenant never paid rent before the 11th of the month; in 10 of those 12 months the tenant paid her rent after the 15th day of the month. On average, the tenant's rent payment over the nine-year period was 16.94 days late.

Throughout this period the landlord, as a cooperative apartment owner, was confronted with continuing expenses related to the apartment, including monthly maintenance charges. In those months when the landlord could no longer wait for the overdue rent and felt compelled to serve a rent demand or prepare a nonpayment petition, subsequently withdrawn, it

---

1. The original petitioner died during the pendency of the proceeding and his executors have been substituted in his stead.

was he who bore the legal expense of the tenant's default. Finally, on March 5, 1992, the landlord served the tenant with a notice of termination of her tenancy, effective March 16, 1992, alleging nuisance, based on the tenant's continuous late tender of rent.

The tenant moved to dismiss the subsequently commenced holdover proceeding, arguing, *inter alia*, that chronic rent defaults comprised of late rent payments do not, as a matter of law, constitute a nuisance and, thus, were not a basis upon which an owner could terminate a rent-controlled tenancy. In a supporting affidavit the tenant asserted, "[O]ccasionally when my former husband's check does not arrive on time, I pay by the 15th of the month." In opposing the motion, the landlord set forth the tenant's history of chronic rent defaults and cited two decisions of this Court, *25th Realty Assocs. v Griggs* (150 AD2d 155) and *Greene v Stone* (160 AD2d 367), which supported a nuisance theory of eviction based on chronic rent defaults, including late payments.

The Civil Court (Fern Fisher-Brandveen, J.) dismissed the petition, holding, *inter alia*, that a tenant's late payment of rent is not such a material breach of the lease as to justify its termination. The Appellate Term reversed and reinstated the petition, holding that, absent an adequate explanation by the tenant, the chronic late payment of rent may constitute a nuisance warranting eviction.

At the subsequent trial a computer-generated spreadsheet of the tenant's rent-payment history in the nine-year period from April 1983 to April 1992 showed that 44 rent demands had been sent and six nonpayment proceedings had been commenced in that period. Except for three occasions, February 1, 1988, March 1, 1988 and May 1, 1989, the tenant had never paid her rent on time. In fact, at times, she failed to pay her rent for months at a time. For example, the tenant paid the May 1984 rent on July 9, 1984, 69 days late; she paid the June 1984 rent on August 8, 1984, 68 days late; her July 1984 rent on August 22, 1984, 52 days late; her May 1983 rent on June 6, 1983, 36 days late; her June 1985 rent on July 16, 1985, 45 days late; her January and February 1988 rent 31 and 39 days late, respectively; her April 1989 rent on May 1, 1989, 30 days late; her July 1989 rent on August 2, 1989, 32 days late; her April and July 1990 rent 22 days late; her October 1991 rent 20 days late; and her February 1991 rent 18 days late.

The tenant testified that after her 1970 divorce she had to present her rent bills to her former husband's attorney, who

would pay them directly. Sometime in 1988 she began to pay the bills herself from her former husband's $1,000 monthly alimony check, which did not always arrive on time. Although it was shown that the tenant was gainfully employed, the Civil Court (Arthur Scott, J.) asserting irrelevancy, refused to permit any inquiry into the nature of her position or salary or other sources of income. The tenant offered no documentary proof as to when she received her alimony checks or as to her claim that they were intended solely for the payment of rent.

At the conclusion of trial, the Civil Court dismissed the petition on the ground that "a woman who is entitled to moneys from her ex-husband by court order and fails to receive same in a timely fashion cannot be considered to have engaged in willful conduct as to warrant a nuisance when her rent is tendered late." A majority of the Appellate Term affirmed, holding, in apparent disregard of its own prior recognition in this case that sufficient facts to constitute a nuisance were alleged and that it was incumbent upon the tenant to show a legally cognizable excuse for the late rent payment, that the tenant's conduct did not "rise to the level of a nuisance [to] warrant an eviction" and that her chronic late tender of rent was not willful. In dissent, Justice McCooe pointed out that financial inability to pay is not a defense to chronic late payments and, even if it were, such a defense was not proved.

This Court has consistently held that the chronic late payment of rent necessitating repeated invocation of the landlord's legal remedies, including the commencement of nonpayment proceedings, may, if not adequately explained, render the tenant's continued possession of the demised premises a nuisance warranting eviction. (*Greene v Stone*, 160 AD2d 367, *supra.*) In that regard, the number of nonpayment proceedings commenced is not dispositive. It is relevant "only in the context of the entire circumstances surrounding the alleged withholding of rent." (*Supra*, at 368, citing *25th Realty Assocs. v Griggs*, 150 AD2d 155, *supra; see, National Shoes v Annex Camera & Elecs.*, 114 Misc 2d 751.)

While the majority notes that the tenant has never "refused" to pay rent, that is not the standard. All that need be shown is that the late payments are chronic and unjustifiable. We also disagree with the majority's conclusion that "[s]ince landlord is required to prove that [it was] compelled to bring numerous nonpayment proceedings to establish a nuisance, those proceedings must be shown to have been brought in good faith to collect outstanding rent and not as a pretense to meet the defini-

tion of nuisance for the purposes of bringing a holdover action." There is no requirement that the landlord show good faith as part of its prima facie case. Nor, in view of the chronicity of the tenant's late payments, is the landlord's bad faith established by service of the December 1991 nonpayment petition—which was apparently prepared prior to the tenant's payment of the December rent—some days after the rent was actually paid or by service of the February 1992 nonpayment proceeding on the wrong party.

Here, rent is due on the first of the month. Rent paid any other time, whether it be in the same month or a subsequent month, is late payment and constitutes a default in the tenant's obligation under the lease to pay rent by the first of the month. A tenant may not unilaterally, to suit his or her proclivity in that regard, alter the clear and unambiguous requirements of a lease. The landlord proved not only the facts pleaded in the petition, which the Appellate Term had previously found sufficient, if unexplained, to warrant eviction, but also a nine-year history of chronic rent defaults by the tenant. Faced with such incontrovertible proof, Civil Court's dismissal of the petition was based, not on any inadequacy of proof or lease interpretation but on a misapprehension of the efficacy of the tenant's proof as to her excuse for her chronic rent defaults. Thus, the issue on appeal is not the sufficiency of the landlord's proof, as the majority here and at the Appellate Term held, but, rather, as the dissent there aptly perceived, the adequacy of tenant's justification for the chronically late payment of rent.

Financial inability to pay does not justify the chronic late payment of rent (*Fishel v Oakley*, NYLJ, May 23, 1990, at 25, col 3 [App Term, 2d & 11th Jud Dists]). This concept is no doubt grounded in the premise that the landlord should not be expected to bear the burden of the tenant's financial problems. (*Supra.*)[2] Of course, the late payment of rent, not so aggravated and long standing as to establish a pattern, which is due to a tenant's temporary financial difficulties and not any calculated effort to harass the landlord, will not constitute a nuisance.

---

2. The proceeding in *Fishel* was not based on nuisance but upon breach of a leasehold obligation. The justification of financial inability to pay is, however, equally unacceptable in either proceeding. The fact that there is no opportunity to cure in a holdover proceeding based on nuisance is no reason to impose an additional burden on the landlord or to extend additional protections to the tenant, especially where, as here, she cannot complain that she has not had abundant notice that the landlord would not tolerate her default.

That, needless to say, is not the case here, where the tenant has continued to pay her rent in an untimely fashion since April 1983. Clearly, an aggravated and long-standing pattern has been established. The service of 44 rent demands over a nine-year period and 11 in the 17-month period preceding the commencement of this proceeding, as well as the commencement of six nonpayment proceedings since 1983, offers stark testimony to that fact. Similarly, this is not a case involving a bona fide dispute as to the correct monthly rent or a claim that the apartment is in need of repair. (*Cf., 25th Realty Assocs. v Griggs,* 150 AD2d, *supra,* at 156-157; *Greene v Stone,* 160 AD2d, *supra,* at 368; *2675 Creston Assocs. v Seldin,* NYLJ, Nov. 27, 1995, at 25, cols 2, 3 [App Term, 1st Dept].)

Nor is it necessary for the landlord to show an intent to harass on the tenant's part (*see, 25th Realty Assocs. v Griggs,* 150 AD2d, *supra,* at 156; *see also, Mill Rock Plaza Assocs. v Lively,* NYLJ, Nov. 1, 1994, at 25, col 3 [App Term, 1st Dept]; *Garfield v O'Donnell,* NYLJ, June 8, 1994, at 24, col 5 [Civ Ct, NY County]) or that he or she has been injured by the late payment. We note, however, that a tenant's chronic late payment of rent will adversely affect a landlord's ability to meet his or her obligations. An owner-landlord of a cooperative apartment has a continuing obligation to pay the apartment's monthly maintenance charges. In this case, the landlord incurred legal expense in the service of rent demands and the institution of nonpayment proceedings.

In order to overcome a documented history of chronic late rent payments that compel a landlord, in an effort to collect the rent, to resort to legal process, the tenant must come forward with demonstrable and admissible evidence justifying the failure to pay rent in timely fashion. (*See, West Coast Co. v Graf,* NYLJ, July 15, 1992, at 21, col 2 [App Term, 1st Dept]; *Leeds v Garcia,* NYLJ, Nov. 3, 1988, at 22, col 6 [App Term, 1st Dept].) Here, the tenant presented no proof to justify her chronic late payment of rent. Her explanation—that she relied on her former husband's alimony check to pay the rent—does not excuse chronic rent defaults. As noted, the lack of financial ability to meet timely a tenant's rent obligations is no excuse for chronic late payment. (*See, Fishel v Oakley,* NYLJ, May 23, 1990, at 25, col 3, *supra.)* Even if it could, there was no evidence in support of such excuse other than the tenant's self-serving, equivocal testimony. She never presented a copy of any of the former husband's late-arriving checks or of the divorce decree, which, she alleged, provided that the former

husband's monthly payments were intended solely for the payment of rent.

Furthermore, despite the clear implication in the tenant's defense that she lacked the financial ability to meet her rent obligations timely, the Civil Court precluded the landlord at trial from eliciting any evidence of the tenant's independent financial resources. The tenant testified that she was gainfully employed but offered no explanation as to why she could not use her salary to meet her rent obligations on time. The trial court refused to permit any inquiry into the nature of her position or salary or other sources of income or assets. Therefore, as the dissent at the Appellate Term noted, "her late payments cannot be attributed to the alimony payments since there is no evidence as to her lack of income from other sources including employment which could have been used to pay the rent." Even if the justification offered by the tenant—the late arrival of her former husband's monthly checks—could excuse her chronic rent defaults, the woefully deficient evidentiary showing she made on this point would not have overcome the landlord's compelling case for eviction based on the chronic defaults. The trial court's rulings precluded the *landlord* from inquiring into the *tenant's* financial circumstances. It was the tenant's burden to establish a justification for her defaults. She made no attempt to make a factual showing in this regard.

Accordingly, the order appealed from should be reversed and the petition granted.

ELLERIN, J., concurs with TOM, J.; MAZZARELLI, J., concurs in a separate opinion; SULLIVAN, J. P., and ROSS, J., dissent in a separate opinion by SULLIVAN, J. P.

Order of the Appellate Term of the Supreme Court, First Department, entered February 6, 1995, which affirmed the order of Civil Court, New York County, entered on or about May 28, 1993, affirmed, without costs.