OPINION OF THE COURT
Douglas E. Hoffman, J.
This summary holdover proceeding presents the question of whether a long-term rent-stabilized tenant may be evicted for breaching a substantial obligation of her tenancy by replacing her landlord’s aged outdoor wooden deck with a new, apparently improved, slightly larger deck and installing a new brick and cement patio in an area that did not previously have such a structure, without permission of the landlord. If the tenant has breached a substantial obligation of her tenancy by effecting unauthorized alterations to the premises, and the breach can no longer be cured by restoring the premises to its original condition, the question arises as to whether the court must permit the eviction to go forward or may it instead fashion an appropriate cure ensuring that the landlord’s property interests are fully protected while preserving a long-term regulated tenancy.
Petitioner commenced this summary holdover proceeding alleging that the tenant breached a substantial obligation of her tenancy in the following four ways: (1) installing a new wood deck and concrete patio in the backyard of the apartment located at 232 East 75th Street, apartment IB, New York, New York, without the permission or knowledge of petitioner; (2) allowing debris to be stored or accumulated in the backyard, creating a hazardous condition; (3) permitting the boiler vents in the backyard to be covered with garbage bags or other material, creating a hazardous condition; and (4) placing graffiti and other writings defacing the exterior walls of the backyard of the subject premises. The court conforms the pleadings to the proof presented at trial (Harbor Assocs. v Asheroff, 35 AD2d 667 [2d Dept 1970]), and sets forth below its findings of fact and conclusions of law.
With respect to what petitioner has described as graffiti on the walls, respondent testified credibly that in 1988 she had painted poetry on the walls of her courtyard. Following objection by petitioner, respondent’s counsel did not pursue questioning into whether or' not petitioner’s predecessor in interest had approved of these writings or had any knowledge of them. The poetry does not in any meaningful manner, *221 however, affect petitioner’s reversionary interest. Furthermore, as there is no evidence that petitioner or its predecessor in interest, by whom petitioner is bound (52 Riverside Realty Co. v Ebenhart, 119 AD2d 452 [1st Dept 1986]), objected to the writings prior to 1999, petitioner’s claim for possession based upon this alleged violation of the lease is time barred. (Plon Realty Corp. v Ford, NYLJ, Mar. 12, 1999, at 26, col 1 [App Term, 1st Dept], citing Westminister Props. v Kass, 163 Misc 2d 773 [App Term, 1st Dept].)
Petitioner introduced photographs to show that at some point respondent had placed items that obstructed egress to and from the courtyard or covered in part the boiler vents. The court finds credible respondent’s explanation that any such objects were easily movable by nature, such as a babystroller, and that such placement of these items was temporary and inadvertent. Petitioner did not carry its burden of proving that respondent created a hazard to others living in the building or to the building itself. The court therefore dismisses those branches of the petition that do not pertain to the replacement deck and new patio.
At trial the parties focused upon the first set of allegations concerning alterations. The parties relied primarily upon a series of before and after photographs and presented virtually no live testimony. The landlord proved all the elements of its prima facie case, including its assertion that it gave no permission to make any alterations to the subject apartment or to the adjacent yard constituting part of the leasehold. Respondent enjoys exclusive use of the yard.
The photographs showed that the appearance of the prior wooden deck was old and somewhat shabby, with at least one of the boards warped, creating a slightly uneven floor surface, and small, but not atypical or dangerous, gaps between the boards. Respondent made no claim and presented no evidence that the condition of the prior deck violated any applicable housing laws. However, in her credible, albeit truncated, testimony the tenant stated that she had been due to give birth and feared that the condition of the deck could cause injury to the child as a result of the width of the crevices between the wooden boards. Respondent also testified that she attempted to contact the landlord at the beginning of June 1999, prior to installing the new deck and patio, but received no return call. During the second or third week of June, respondent averred, she and two friends built a new deck. Respondents’ friends are in the construction business. They *222 replaced and covered the area with clean, new wood. Respondent did not know the type of wood used, but believed that it was treated. Respondent stated that she did not know whether or not the old deck was removed or whether the new deck was constructed atop the old deck. The new deck was built over three to seven days.
The parties’ testimony conflicts concerning how much larger the new deck was. Neither party presented measurements. Respondent estimated that the new deck was six inches to one foot longer. Petitioner’s agent testified that the deck was a couple of feet longer at each end. From the photographs, the new deck was significantly larger and was slightly more elevated than the previous installation. Unlike the old deck, the new structure had steps attached. The new deck had an attractive, even appearance, was not disproportionate to the space, and looked as if it had been completed in a worker-like manner, although respondent offered no testimony as to the manner of construction or the quality of the materials used.
The second structure built by respondent was a brick patio. This patio was at ground level several feet to the rear of the wooden deck. Again, neither side presented measurements and rough estimates ranged from six to eight feet by six to eight feet. Petitioner claimed that no structure had previously been in this area, while respondent claimed that when she moved in there were stones, sticks and overgrown vegetation in the area. Photographs of the condition of this area prior to installation of the new patio were not conclusive, but no prior structure appears in any photographs. The court finds that respondent installed a new structure where only debris had previously been located. This was a new installation and tenant testified that the brick was installed over a concrete base. The patio also had a well-finished appearance and the work appeared to have been neatly done. Respondent admitted petitioner’s claim that respondent conducted this work without petitioner’s permission. Respondent presented no evidence that she sought to contact petitioner prior to having this work performed.
A tenant may not make extensive and significant alterations without the consent of the landlord. (Agate v Lowenbein, 57 NY 604 [1874].) In Agate, the lease allowed the tenant to make interior alterations as long as no injury to the premises occurred. (Supra, at 605.) However, the Court recognized that injury to the premises could only be ascertained by an examination of the facts: “Whether the acts which defendants did really caused injury, or whether they were reasonably required *223 for the enjoyment of the premises according to the business which they carried on, cannot be determined as a question of law, but is rather a matter of fact. It depends upon the character of the building * * * the nature and requirements of the business of the defendants * * * the extent of the alterations and their effect upon the property, whether permanent or transitory.” (Supra, at 610.)
More recent cases maintain this view in the context of both statutory and contractual restrictions on the right to make alterations. In Rumiche Corp. v Eisenreich (40 NY2d 174 [1976]), no controlling lease provisions existed and the landlord commenced the holdover on the basis of New York City Rent, Eviction and Rehabilitation Regulations § 52 (a) which prohibited the tenant from “ ‘inflicting serious and substantial injury upon the landlord.’” (Supra, at 176-177.) In Rumiche, the tenant replaced a fallen ceiling, repaired a defective light fixture, attached a wooden closet to a wall and erected a wooden frame around the window. The Court held that these alterations did not run afoul of the statutory proscription against alterations causing substantial injury to the premises. (Supra, at 181.)
In the instant case, petitioner relies upon a restrictive lease provision prohibiting a tenant from conducting any alterations without the permission of the landlord. Where more restrictive lease provisions govern, alterations arise from aesthetic concerns rather than dangerous conditions and significant injury to the reversion is foreseen, courts have been more likely to conclude that the alterations constitute a substantial violation of the lease requiring forfeiture of the tenancy. (Freehold Invs. v Richstone, 34 NY2d 612 [1974].) In Freehold, the tenant removed painted kitchen cabinets and replaced them with oak veneer cabinets, installed false bulkheads in the living room to conceal recessed lighting fixtures, installed a box canopy over the bed, and installed metallic wall covering in the living room and bedroom. (Supra, at 612-613.) The Court concluded that these alterations were substantial, made for purely aesthetic reasons, and because they could not be removed without serious damage to the apartment “constitute a significant injury to the reversion, entitling appellant landlord to possession of the premises.” (Supra, at 613; see also, DeLorenzo v DiBlasi, NYLJ, *224 Sept. 27, 1988, at 17, col 2 [App Term, 1st Dept].)[1] If the removed fixtures or appliances can be reinstalled, tenants may cure the breach. (Britton v Yazicioglu, 189 AD2d 734 [1st Dept 1993].)
Where, on the other hand, significant alterations occur after a tenant has given notice of defective conditions and the landlord is unable or unwilling to make needed repairs, forfeiture of the tenancy is not required. (Mengoni v Passy, 254 AD2d 203 [1st Dept 1998].) Similarly, where a landlord fails timely to object to or participates in the alterations, application of waiver or estoppel preclude forfeiture of the tenancy. (Haberman v Hawkins, 170 AD2d 377 [1st Dept 1991]; Duell v Brown, NYLJ, Nov. 7, 1994, at 28, col 4 [App Term, 1st Dept].)
Certain alterations, although done for purely aesthetic reasons, or to replace old appliances, and which do not alter the character of the premises, or cause injury to the reversion, do not warrant forfeiture of the tenancy. For example, a tenant may install mirrored room dividers and mirrors on walls (Solow v Lubliner, NYLJ, June 6, 1990, at 21, col 2 [App Term, 1st Dept]); replace old appliances (Ram I v Stuart,[2] 248 AD2d 255 [1st Dept 1998]; Garay v Devine, NYLJ, Oct. 27, 1989, at 21, col 1 [App Term, 1st Dept]); replace old kitchen and bathroom appliances (Icolad Assocs. v Frazer, NYLJ, Apr. 17, 1990, at 21, col 1 [App Term, 1st Dept]); or install a valance for hanging drapes (Harmil Realty Co. v Feld, NYLJ, Mar. 11, 1987, at 6, col 4 [App Term, 1st Dept]).
Most relevant here are certain other types of alterations, which, while seemingly cosmetic, have been found materially to affect the reversion. A tenant may not erect an enclosure for a terrace (Park City Estates Tenants Corp. v Lohani, NYLJ, Jan. 15, 1991, at 25, col 3 [App Term, 2d Dept] [enclosure changed the characteristic appearance of the building]); or *225 construct a deck on an outside patio (Rutherford Tenants Corp. v Kaufman, 212 AD2d 416 [1st Dept 1995]). In Kaufman, the board of a cooperative corporation had approved the tenant’s alteration plan, but the tenant exceeded the scope of the plans by constructing a deck in addition to the approved alterations. The board brought an action for an injunction and Supreme Court ordered removal of the deck, restoration of the patio to its former condition, and directed a hearing to assess damages.
The instant case differs from Kaufman (supra) inasmuch as here the tenant replaced an older existing installation with one that, albeit slightly larger, is the functional equivalent of the prior deck. Paragraph 7 of respondent’s lease expressly requires petitioner’s prior written consent to make any alteration. The situation here is most analogous to those cases in which older functioning kitchen cabinets are removed and replaced with newer models that may be larger and certainly have a more pleasing appearance, but nonetheless are alterations without proper consent. (Britton v Yazicioglu, supra.)
The problem quite frankly in the instant case is that respondent may well have had valid grounds for installing the new deck and the new deck may have been of superior quality, but for whatever reason the testimony adduced at trial in this regard was exceptionally limited. The court is now confronted with a situation in which a long-term stabilized tenant has made a material alteration to the premises by apparently removing an old deck concerning which there was insufficient evidence to indicate that it presented a health hazard or violated any code or lease provision. There is also no evidence to show that respondent attempted in any meaningful manner to apprise petitioner of any alleged defects in the deck or to permit the landlord to undertake any needed repair to the deck. It appears that respondent can no longer reinstall the old deck and may be faced with eviction as a result of this mistaken, although innocently intended, action. There can be no doubt but that the new deck and the installation of the patio greatly improve the appearance of the courtyard and probably enhance the value of the premises. There is neither evidence nor reason to suggest that the old deck held emotional, aesthetic or other special significance to petitioner.
Under these circumstances, where reinstallation of the deck may no longer be possible, yet the law abhors forfeiture of long-term leaseholds (Tehan v Peters Print. Co., 71 AD2d 101 [4th Dept 1979]; 220 W. 42 Assocs. v Cohen, 60 Misc 2d 983 [App Term, 1st Dept 1969]), the court will not evict this long- *226 term tenant, but will instead fashion an appropriate cure protecting the property rights of petitioner.
In Lexington & Fortieth Corp. v Callaghan (281 NY 526 [1939]), the tenants leased space for use as stores. The lease permitted alterations only with the consent of the landlord. (Supra, at 528.) The trial court’s findings, unchallenged on appeal, indicated that the tenants had altered the exterior of their space “ ‘without plaintiffs’ knowledge, acquiescence, consent or permission, expressed or implied in any form whatever.’ ” (Supra, at 529, quoting trial court decision.) The trial court found that the alterations cheapened the character and appearance of the hotel in which the leased premises were located. (Supra.) The tenants were enjoined from making any further alterations, and the judgment as entered stated that the tenants were also “ ‘directed to forthwith remove the rear door and present front as reflected in Plaintiffs’ Exhibits 8 and 9, and restore the said premises, both rear and front, to their conditions existing prior to the said alterations herein complained of, as reflected in Plaintiffs’ Exhibit 3, and as indicated in Plaintiffs’ Exhibit 7, prior to the time one of the rear windows was broken through, provided nevertheless that in lieu of such immediate removal and restoration, the said defendants, within ten days after service of a copy of this order and notice of entry, may post in escrow with the attorney for the plaintiffs a good and sufficient bond in the penalty of $2,500 conditioned upon restoration of the premises, at the expiration of its lease to their original state.’ ” (Supra, at 530, quoting trial court judgment.) Plaintiffs appealed that aspect of the judgment which allowed for the posting of a bond, and argued that enforcement of the injunction should not be postponed until the end of the lease because such delay constitutes “denial of the only complete remedy which the plaintiffs could invoke for wrong done and the only complete protection from injury caused by continuance of the wrong.” (Supra, at 531.) The Court of Appeals held that the trial court had the discretion to fashion a remedy taking into account “conflicting considerations of benefit to the plaintiffs and harm to the defendants which would follow from the grant of the drastic remedy for which the plaintiffs ask, and all the facts and circumstances which help to show what is just and right between the parties. The record and the findings disclose circumstances which justify the exercise of the court’s discretion in granting the partial relief formulated in the judgment.” (Supra, at 131.)
While Housing Court does not possess the equity powers of the Supreme Court, it can exercise discretion in a manner *227 that will preserve a long-standing rent-regulated tenancy while insuring that the landlord’s reversionary interest suffers no harm. Therefore, the court grants those branches of the petition seeking a final judgment of possession in favor of the landlord based upon unauthorized alterations to the subject premises concerning installation of a new wood deck and of the brick patio. Pursuant to RPAPL 753 (4), issuance of the warrant of eviction is stayed 10 days to permit respondent an opportunity to cure in the following manner: The cement patio must be removed. If the original wood deck remains beneath the new wood deck, the new wood deck must be removed. If the old deck has been removed, as it appears, respondent may cure this alteration by posting a bond in the amount of $5,000 to secure the cost of any damage caused by removal of the present deck and restoration of the equivalent of the prior deck upon her permanent vacatur from the premises. In the event that restoration is not effected upon vacatur, tenant shall forfeit the bond.

. In DeLorenzo (supra), the tenant installed a 13.5-foot by 6.5-foot loft platform and stairway, which accommodated, not only a bed and mattress, but additional furniture. Reversing the trial court, the Appellate Term noted that this installation was not merely a large piece of furniture, as the trial court suggested, because it “was not readily removable both in terms of removal cost ($3,000) and manpower.” (Supra, at 17, col 3.)

. In Ram I v Stuart (supra), the tenant replaced a defective 27-year-old stove with a new one. The trial court found that the tenant had breached the lease but that eviction was unwarranted provided that tenant cure by reinstalling the old stove and allowing the landlord to repair it. Appellate Term modified the trial court’s order by vacating that part of the order directing reinstallation of the old stove. (NYLJ, Apr. 25, 1997, at 25, col 1.) The Appellate Division affirmed the order as modified by Appellate Term.