OPINION OF THE COURT
Laurie L. Lau, J.
Petitioner commenced this holdover summary proceeding to recover possession of apartment A15-14, located at 50 West 34th Street, also known as 1282 Broadway, in Manhattan (the Apartment), after expiration of a notice of termination, alleging that respondent had violated a substantial obligation of his *501 tenancy by “consistently, chronically and unjustifiably exhibit-ting] a pattern of late payment of rent, refusing to pay rent when due, and/or compelí[ing] the landlord to commence numerous proceedings in the New York City Housing Court to collect rent.” Respondent has interposed a written answer asserting a general denial, and affirmative defenses of failure of the petition to state a cause of action for failing to plead service of a notice to cure, and of acceptance of rent. Respondent now moves to dismiss this proceeding based upon the failure to serve a notice to cure; petitioner cross-moves for summary judgment on the grounds that no notice to cure is necessary and that respondent asserts no viable defense to this proceeding.
The central issue to each party’s motion is whether, in a holdover proceeding alleging violation of a substantial obligation of tenancy through the chronic nonpayment of rent, the petitioner is required to plead and prove service of a notice to cure. It is undisputed that no notice to cure was served; the notice of termination asserts that “it has been determined that a breach of a substantial obligation of tenancy for the chronic late and/or nonpayment of rent is not subject to cure as a matter of law and accordingly this is the only Notice you will receive.” Respondent, in the motion-in-chief, urges that petitioner misapprehends the law, and that a notice to cure must be served pursuant to both the Rent Stabilization Code ([RSC] 9 NYCRR parts 2520-2530) and respondent’s lease.
The RSC provides, in pertinent part, that:
“Without the approval of the DHCR, an action or proceeding to recover possession of any housing accommodation may only be commenced after service of the notice required by section 2524.2 of this Part [Termination Notices], upon one or more of the following grounds, wherein wrongful acts of the tenant are established as follows:
“(a) The tenant is violating a substantial obligation of his or her tenancy other than the obligation to surrender possession of such housing accommodation, and has failed to cure such violation after written notice by the owner that the violations cease within 10 days; or the tenant has willfully violated such an obligation inflicting serious and substantial injury upon the owner within the three month period immediately prior to the commencement of the proceeding.” (RSC § 2524.3).
*502 Respondent’s lease provides, at paragraph 17, that:
“[y]ou default under the Lease if You act in any of the following ways: (a) You fail to carry out any agreement or provision of this Lease * * * If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.”
Respondent asserts that the regulatory and lease provisions mandate service of a notice to cure prior to termination of respondent’s tenancy. Respondent correctly anticipates petitioner’s reliance on Adam’s Tower Ltd. Partnership v Richter (186 Misc 2d 620 [App Term, 1st Dept 2000]), and upon 3363 Sedgwick v Medina (187 Misc 2d 421 [App Term, 1st Dept 2000]). Petitioner’s position rests heavily upon the holding in Adam’s Tower, as petitioner asserts that “[t]he Adam’s Tower decision not only relieves petitioner from the obligation to serve a notice to cure, but requires that this Court decline to apply the post judgment cure of RPAPL § 753(4) if summary judgment is appropriately rendered against respondent.”
In Adam’s Tower, the court affirmed:
“that part of the order holding that a notice to cure was not required because the cumulative pattern of tenants’ course of conduct was incapable of ‘cure’ within ten days (National Shoes v Annex Camera & Elecs., 114 Misc 2d 751). The fact that a lease or statute provides time for a cure ‘does not necessarily imply that a means or method to cure must exist in every case’ (National Shoes v Annex Camera & Elecs., [114 Misc 2d at 752])” (Adam’s Tower, 186 Misc 2d at 622).
In 3363 Sedgwick, the court held that “[s]ervice of a formal notice to cure was not a sine qua non of the landlord’s maintenance of this summary holdover proceeding based upon allegations that the tenant’s history of chronic rent defaults constituted a violation of a substantial obligation of the tenancy, since ‘the cumulative pattern of [tenant’s] course of conduct was incapable of “cure” within ten days’ (Adam’s Tower Ltd. Partnership v Richter, 186 Misc 2d 620, 622 [App Term, *503 1st Dept] * * *)” (3363 Sedgwick, 187 Misc 2d at 421-422). Seminal to both these decisions is the court’s determination that 10 days provides insufficient time to effect a cure of chronic nonpayment of rent.
There has been considerable litigation concerning the differing remedies and standards of proof in those chronic nonpayment holdovers styled as nuisance proceedings and those alleging violations of substantial obligations of tenancy and the intermingling of those standards. A petitioner seeking to recapture an apartment because of chronic nonpayment of rent may choose to bring a proceeding based upon a theory that the chronic nonpayment of rent constitutes either a violation of a substantial obligation of tenancy or that chronic nonpayment of rent constitutes a nuisance. The RSC also permits, without the service of a notice to cure, service of a termination notice on the ground that the “tenant has willfully violated such an obligation inflicting serious and substantial injury upon the owner within the three-month period immediately prior to the commencement of the proceeding” (RSC § 2524.3 [a]). This ground plays no part in this proceeding as it is neither addressed by the notice of termination nor by the petition.
To establish that chronic nonpayment of rent constitutes a nuisance, the petitioner must demonstrate that “it was compelled to bring numerous nonpayment proceedings within a relatively short period and that the tenant’s nonpayment was willful, unjustified, without explanation, or accompanied by an intent to harass the landlord” (25th Realty Assoc. v Griggs, 150 AD2d 155, 156 [1st Dept 1989] [emphasis supplied]). If the landlord succeeds in meeting this significant burden of proof, upon entry of judgment, respondent is not entitled to any opportunity to cure (Sharp v Norwood, 223 AD2d 6, 11 [1st Dept], lv granted 231 AD2d 974 [1st Dept 1996], affd 89 NY2d 1068 [1997], rearg denied 90 NY2d 889 [1997] [holding that “a nuisance found to be caused by chronic late payment of rent cannot be cured”]). By contrast, a landlord seeking to establish that a tenant’s chronic nonpayment of rent constitutes a violation of a substantial obligation of tenancy faces a different and less stringent burden of proof. A landlord may demonstrate this by showing that it has been “repeatedly forced to institute nonpayment proceedings and to serve rent demands on respondent to collect chronically late rental payments” (Sharp v Norwood, 89 NY2d 1068, 1069 [1997], rearg denied 90 NY2d 889 [1997]).
A nuisance created by chronic nonpayment of rent necessarily involves violation of a substantial obligation of tenancy. It *504 has been held that “while a nuisance based on chronic late payment of rent also constitutes a breach of a substantial obligation of the lease, the type and degree of evidence required to establish a nuisance differs from the proof needed to show a breach of a leasehold obligation * * * As stated above * * * the landlord must prove more than a mere pattern of late payment of rent” (Sharp v Norwood, 223 AD2d at 11). The Court concluded that a significant consideration for a landlord in selecting its theory of litigation is the availability of an opportunity to cure; the Court noted that “[i]t is quite probable that the landlord did not predicate this action upon a breach of a lease provision so as to avoid the remedial prescription of RPAPL 753 (4), which grants a 10-day stay for the tenant to cure the breach. By contrast, a nuisance found to be caused by chronic late payment of rent cannot be cured” (id. at 11). The Court did not eliminate the requirement for an opportunity to cure when there exists difficulty or improbability that such a cure can be effected (see, e.g. National Shoes v Annex Camera & Elecs., 114 Misc 2d at 752 [“But, there is no contractual or statutory right inuring to a party, of a means to cure. The fact that the lease provides time for a cure does not necessarily imply that a means or method to cure must exist in every case”]). The court in National Shoes found the notice to cure sufficient, although questioning the utility of the opportunity it afforded the tenant.
Courts have recognized that landlords may commence a holdover proceeding based on either nuisance or breach of a substantial obligation of tenancy due to chronic nonpayment of rent, that the burden of proof is greater when the claim is one of nuisance, and that, when a petitioner claims a breach of a substantial obligation, a respondent has the right to attempt to effect a cure. This is consistent with the compelling public policy to avoid the forfeiture of leases (see Sharp v Norwood, 223 AD2d at 11; Marbar, Inc. v Katz, 183 Misc 2d 219 [Civ Ct, NY County 2000]; Semans Family Ltd. Partnership v Kennedy, 177 Misc 2d 345, 348 [Civ Ct, NY County 1998]). Specifically, it has been held that “the policies underlying passage of the rent stabilization laws are generally better served by holding out to the tenant the opportunity * * * to cure the breach of his rent obligations” (Park Summit Realty Corp. v Frank, 107 Misc 2d 318, 323 [App Term, 1st Dept 1980], affd 84 AD2d 700 [1st Dept 1981], affd 56 NY2d 1025 [1982]). This compelling public policy consideration requires this court to recognize and apply the differing standards of proof, procedural requirements and *505 remedies for nuisances and violations of substantial obligations of tenancy.
Petitioner’s assertion that Adam’s Tower vitiates in all instances the requirement of a notice to cure, notwithstanding the language of the RSC or any lease provisions, is not well taken. Adam’s Tower contemplates a case by case analysis; the decision’s wording is equivocal, the court noting that the language of a statute or a lease allowing time for a cure “ ‘does not necessarily imply that a means or a method to cure must exist in every case’ ” (Adam’s Tower v Richter, 186 Misc 2d 620, 622 [emphasis supplied], quoting National Shoes v Annex Camera & Elecs., 114 Misc 2d 751 [Civ Ct, NY County 1982]). Petitioner relies on the principle enunciated in National Shoes to support its contention that no notice to cure is required; the court never had that issue before it, as petitioner had served a notice to cure. The court principally considered whether the notice to cure was illusory because cure could not be effected in the allotted 10 days. The court held that a notice to cure past conduct, given the time contemplated by the lease, sufficed; the tenant could in that time embark on a course of conduct designed to prevent future breaches of the obligation to pay rent in a timely manner though the court hypothesized that such conduct would not constitute a cure. Rather than mandating that there are no circumstances under which a landlord must serve a notice to cure, the decision merely contemplates whether there are some circumstances under which a notice to cure is not necessary. The decisions in Sharp v Norwood and Park Summit v Frank, as affirmed and reaffirmed, set forth the requirements for a notice to cure and the rationale behind that requirement; they offer compelling guidance. Indeed, courts have contemplated whether, under some circumstances, nuisance, generally considered noncurable, is capable of cure (see 18-62 Realty v Levy, NYLJ, Dec. 14, 1999, at 26, col 1 [App Term, 1st Dept]). The question that remains is whether the facts of this case merit an exception to the rule enunciated in Sharp and Park Summit, such as the court apparently found in Adam’s Tower.
Respondent’s lease establishes that the failure “to carry out any agreement or provision of this lease” constitutes a default, and that such a default entitles the owner to serve the tenant “with a written notice to stop or correct the specified default within 10 days.” The lease recognizes that some defaults may be incapable of correction within that 10-day period, and provides for more than one means of curing defaults. A tenant *506 in default under the lease must “either stop or correct the default with 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible” (emphasis supplied). Respondent’s lease not only provides a cure period for defaults capable of cure within 10 days, but also for defaults that, by their nature, cannot be cured within a 10-day period. The fact that a tenant whose lease does not contain such provisions may not have a similar right to cure does not vitiate the provisions of respondent’s lease.
It has been held that “[o]rdinary principles of contract law and construction are applicable to leases for rent-stabilized apartments (Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 489). The statutory scheme simply establishes the minimum rights to be accorded tenants, and does not preclude a contract that gives a tenant greater rights” (Minick v Park, 217 AD2d 489, 490 [1st Dept 1995]). Given effect to the provisions of respondent’s lease calling for a notice to cure would not be an affront to public policy (see, e.g., Rima 106 v Alvarez, 257 AD2d 201 [1st Dept 1999]), as the provision merely expands a right granted by statute even if a tenant’s lease includes no provision allowing for defaults to be cured. Respondent could satisfy the terms of the lease by commencing and continuing a pattern of conduct consistent with the requirements of the lease for timely payment of rent. The argument, advanced by petitioner, that there is no cure for past conduct, is seriously at odds with the terms of the lease, which, after all, was offered by petitioner to respondent. There can never be a “cure” for past conduct, as one cannot undo the past; for any default, the concept of a cure entails future conduct conforming to the requirements of lease and law (see 326-330 E. 35th St. Assoc. v Sofizade, NYLJ, Aug. 1, 2001, at 18, col 4 [Civ Ct, NY County]). The regulatory scheme and the provisions of respondent’s lease both contemplate an opportunity to cure, the lease addressing specifically those situations in which effecting a cure may not be possible within 10 days. Whether or not respondent has cured the breach is a question appropriately committed to the trier of fact. Petitioner unilaterally determined not to serve a notice to cure, deprived respondent of the opportunity to attempt a cure by doing so, and appropriated a determination properly within the province of the court: whether cure was possible, and if so, whether a cure had occurred.
Petitioner and respondent entered into a lease including provisions requiring a notice to cure in the event that respondent *507 breached a provision of the lease, and requiring the respondent either to cure the breach within 10 days, or to begin to cure the breach within 10 days if it could not be cured in that period. Service of a notice to cure was a prerequisite to this holdover proceeding, and petitioner’s concession that no such notice was served renders the petition fatally defective.
Accordingly, respondent’s motion is granted for the reasons set forth above and this proceeding is dismissed. Petitioner’s cross motion is denied as moot.